## Schneider v. Rolf.

(Decided November 20, 1925.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Municipal Corporations—Whether Motor Vehicles Collided Held Question for Jury.—In action for injuries to one riding in automobile, alleged to have been overturned by collision with defendant's truck, whether there was any collision held for jury on conflicting evidence.

2. Municipal Corporations—Driver of Automobile Reaching Street Intersection Before Truck Approaching from Right Held Not Contributorily Negligent in Attempting to Cross.—Driver of automobile, reaching street intersection when defendant's truck approaching from right was 75 or 100 feet away, held not contributorily negligent in undertaking to cross street; Ky. Stats., section 2739g-37, giving car first reaching intersection right of way, though other car was approaching from right.

3. Appeal and Error—Offer of Evidence, Properly Excluded by Court and Subsequently Given Outside Jury's Presence, Held Not Prejudicial to Defendant.—In action for injuries sustained in automobile collision, offer of evidence, properly excluded by court, as to rate of speed and manner in which defendant's truck was being driven earlier on same day at different place by employee who was driving at time of accident, held not prejudicial to defendant, though another witness, on motion of plaintiff's counsel, gave

similar evidence outside jury's presence; plaintiff's counsel having made no effort, directly or indirectly, to get such incompetent evidence before jury after its exclusion.

4. Witnesses—Evidence that Truck Driver Pleaded Guilty to Charge of Reckless Driving Held Admissible to Impeach His Testimony in Action for Injuries in Collision.—In action for injuries sustained in automobile collision, evidence that driver of defendant's truck pleaded guilty in court to charge of reckless driving and exceeding speed limit on such occasion held properly admitted, not to establish such fact, but to impeach or contradict his testimony inconsistent with such plea, even if there be no such offense as reckless driving.

5. Damages—$1,425.00 for Loss of Time by Stone Contractor Held Not Excessive.—$1,425.00 for loss of time by stone contractor, as result of injuries confining him to hospital and his house from December 1 to March 2, necessitating use of crutches until March 20 and a cane thereafter until September 1, and preventing him from going regularly to business and taking charge of it until middle of following April, held not excessive.

6. Municipal Corporations—Instruction Held Not Erroneous as Not Requiring Finding Defendant's Negligent Acts were Proximate Cause of Automobile Collision.—Instruction authorizing recovery only if jury believed that defendant's negligent acts caused defendant's truck to collide with plaintiff's automobile held not erroneous as not requiring jury to believe that such acts or some of them were proximate cause of collision and resulting injury.

JOHN E. SHEPHERD for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellee brought this action for damages against appellant, alleging that because of defendant's negligence and that of his employee an automobile truck in which defendant and his said employee were at the time driving was caused to come in collision with the car in which appellee was at the time riding, at or near the intersection of Fourth and Overton streets in Newport, whereby the car in which plaintiff was riding was caused to be overturned and the plaintiff thrown therefrom, and both bones in his right leg broken and other injuries received. The first paragraph of the answer was a traverse of the material allegations of the petition, and specifically denied any collision; and in a second paragraph contributory negligence was relied upon.

The petition sought a recovery for medical attention, loss of time, and impairment of the plaintiff's earning power; and the verdict separated the three, and found $75.00 for medical attention, $1,425.00 for loss of time and $1,500.00 for impairment of earning power and physical and mental pain and suffering, a total of $3,000.00.

The evidence for the plaintiff showed that he and his employee were going east on Fourth street and when they came to the intersection of Fourth and Overton they saw appellant's truck some 75 or 100 feet away coming north on Overton street and approaching the intersection at a high rate of speed. It was the purpose of plaintiff and his employee to go south on Overton street, and they proceeded at a slow rate of speed to cross Overton street, while the truck of defendant continued its high rate of speed and the two cars collided at or about the intersection, bringing about plaintiff's injury. The evidence for the defendant is that the two cars reached the intersection about the same time, and that defendant's car, as they thought, had the right of way, and that while the two cars came near together at the intersection, because of the foresight and careful driving of defendant's driver a collision was avoided and there was in fact no collision of the two cars. Defendant also introduces evidence tending to show that plaintiff's car in making a short turn, either for the purpose of avoiding the collision or for some other purpose, overturned itself, and expert evidence is introduced to show that cars of the kind plaintiff was using are apt to so overturn when they have been used for some time without any repair of the radius rod.

The first insistence for appellant is that the evidence as a whole and the physical facts disclose that there was in fact no collision. In this counsel is plainly in error, for not only do the two occupants of plaintiff's car testify there was a collision but three other witnesses, two of whom were only 50 to 60 feet away, testify they saw the collision and heard the crash of the cars coming together. It is true appellant and his driver testify there was no collision between the cars, and some three or four witnesses testify that there was no evidence shortly thereafter on appellant's car of a collision, but some of them do say there was an abrasion or scratch of some kind upon one of the wheels of appellant's machine. Clearly, therefore, there was a conflict in the evidence on

this issue, and the jury must have found on it for the plaintiff, for under the instructions there could have been no verdict for the plaintiff otherwise.

Defendant likewise contends that plaintiff and his driver were guilty of contributory negligence, and that he could not therefore recover at all. And that contention is based upon the provisions of section 2739g-37 which provides:

"Except where otherwise directed by a traffic officer the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle."

The defendant's evidence did tend to show that the two vehicles reached the point of intersection about the same time, but the evidence for the plaintiff was positive that when his car reached the corner defendant's car was 75 or 100 feet away approaching the intersection. Clearly, therefore, if defendant's car was that distance from the intersection when plaintiff's car undertook to cross Overton street there was no contributory negligence, for under those circumstances the statute clearly means that although a car is approaching from the right, the other car has the right of way because it reached the intersection first. This question was distinctly submitted in the instructions, and the finding was evidently against defendant's contention.

On the trial plaintiff introduced a witness who was interrogated by appellee's counsel concerning the rate of speed and the manner of driving one of appellant's trucks by his employee who was driving at the time of this accident, but having reference to an earlier period on the same day and at a different time and place. Upon objection the court sustained the defendant's objection to this testimony, and as a matter of fact the evidence was never placed before the jury. It is true that another witness upon motion of plaintiff's counsel gave similar evidence before the court outside of the presence of the jury, which plaintiff's counsel wanted to use in the form of an avowal. The defendant's counsel objected to all of this evidence, and his objection was sustained, and no

part of it was heard by the jury.   However, he contends
on this appeal that his motion made at the time to set
aside the swearing of the jury, because such evidence was
offered, should have been sustained.

The ruling of the court manifestly was correct in ex-
cluding this evidence, and as no part of it was placed be-
fore the jury we are at a loss to understand how appel-
lant could have been prejudiced.   In the presence of the
jury this evidence was offered only once, and when the
court excluded it there was thereafter no effort by plain-
tiff's counsel, either directly or indirectly, to get before
the jury this incompetent evidence.   Clearly therefore
the situation is essentially different from that class of
cases relied upon by appellant where counsel persistently
and repeatedly, by indirection and otherwise, sought to
get before the jury evidence which the court had prop-
erly excluded.

After this accident appellant's driver was charged
in court with reckless driving and exceeding the speed
limit upon the occasion in question, and pleaded guilty
to that charge.   On the trial in this case his evidence was
wholly inconsistent with his plea of guilty which he had
formerly entered, and the court permitted plaintiff to
introduce in evidence the fact that he had entered such
a plea, but it was admitted only for the purpose of im-
peaching or contradicting his evidence given on this trial.
It is said that this evidence was incompetent for any pur-
pose because evidence of conviction of a penal offense is
not competent to establish a fact in a civil proceeding;
but the evidence here was not introduced to establish a
fact, but only by express admonition of the court, for the
purpose of impeachment or contradiction, and we are
aware of no reason why a man's admission in open court
may not be used to contradict a subsequent statement
made by him, as well as his statement outside of court.
It is likewise said that there is no such offense as reck-
less driving, and assuming that to be true, still his admis-
sion in open court of the fact that he did drive recklessly
may be used to contradict his subsequent statement that
he did not.   We think this evidence was competent for
the purpose for which it was admitted.

But it is said that the assessment of damages as to
loss of time is excessive under the evidence.   We know
of no better answer to that contention than to insert that

part of the lower court's opinion on that subject upon a motion for a new trial, to-wit:

"The jury, in their verdict, separated the award for loss of time from that awarded for medical attention, pain and suffering, and impairment of the power to earn money, and awarded for loss of time the sum of $1,425.00, which sum it is contended exceeds that which was testified to by any of the witnesses, that is to say, that the time testified to as having been lost when computed or measured by its value in money, by a witness or witnesses, does not equal the sum of $1,425.00.

"The time of trial was December 15, 1923. He was injured December 1, 1922.

"The evidence discloses that the plaintiff was a cut stone contractor with his place of business in Newport, he being the owner and manager of the business, and the amount of business done by him per year was about $50,000.00. The work required of him, or which he did do was everything from manager of the business, which includes the procurement of business and the making of contracts, and boss of the men engaged in preparing and cutting stone in the yard and in the doing of the work contracted for, down to laborer. As described by him, he takes off plans, goes out in the yard and sees the stone is put on trestles for the stone cutters, gets on roofs and measures the roof, coping and chimney caps, examines the piles of stone in the yard, and climbs over the piles of stone in making selection and arranging the stone for work upon it, and if he did not do this latter work he would have to have a stone cutter do it, which would cost the wages of a stone cutter during such time as they were engaged in it. That while or during his absence from the business he was required to have stone cutters there the year around, whereas when he was present he could lay them off or practically all of them off during the slack period, and during his absence he would require some one in the office. During his absence he was required to keep a stone cutter or cutters there, and did do so all the time. I do not remember the wages of a stone cutter, and it does not appear from the plaintiff's testimony that he testified to what it was,

but I think it otherwise appeared. Now, as to his absence from his work and partial loss of time, it is shown that he was taken to the hospital and remained there nine days, when he was taken to his home with his leg in a cast, which was removed after eight weeks, then it was taken off and by exercising his toes he was able in a few weeks to put his toes to the floor, and he first got out on March 2, on crutches, and had a driver to take him to his place of business where he stayed an hour. He continued on crutches until March 20, and after that used a cane, which he continued to use until September 1. At the time of trial if he walked five or six squares he would have to sit down for half an hour. This condition did not exist every day but about every two or three days. That at the time of trial he was only able to go out among the piles of stone and climb over and among them to the extent of about one-half of that which he was formerly able to do. About the middle of April, 1923, he began going regularly back to his business, and taking charge of it. When he was hurt he employed a man in the office to take his place and paid him $55.00 per week. This man could take plans, but he could not run the business like the plaintiff would. After he went back regularly to his place of business in April he stayed there nearly all of the day, but was required to leave earlier each day to bathe his limb and treat it. The man he employed to take his place in the office, he kept until about August 15th.

"It is apparent that his loss of time, bearing as it does to the various character and kinds of work the relation shown by the proof, and being a total loss of time for part of the period to the time of trial, and partial for another part, can not be measured by a yard stick. If we take only the salary of the office man to replace him, and count his salary only during the period when the plaintiff was entirely absent from his business, it would amount to something over 22 weeks at $55.00 per week, or about $1,210.00. But this was not the value of the time lost by the plaintiff, for the office man did not and could not do the work which the plaintiff did, and other men had to be employed, and were employed, and it also leaves out of consideration the

value of the plaintiff's lost time from April 15th to December 15th, during which period it was not a total but only a partial loss of time during which he lost such time during each day as he was required to leave his business to bathe and treat his wounds, or leg, and during the whole of which period he did not do and could not do the work in the stone yard, and even at the time of trial could only do about half what he had formerly done, and it omits from consideration any portion of the $935.00 paid the office man from April 15th to August 15th and omits any sum or compensation for the time lost for which he was required to and did employ stone cutters to do the work which he had formerly done, all of which was made necessary by reason of his partial loss of time to the extent which he was unable to perform the work after his return that he did and was able to do before the injury. In the opinion of the court the evidence does not fail to sustain the award of $1,425.00 for loss of time.''

It is contended for appellant that the instructions are erroneous because the court did not require the jury to believe, before finding for plaintiff, that the alleged acts of negligence by defendant, or some of them, were the proximate cause of the collision and the resultant injury to plaintiff. The argument appears to be that it is essential in such instruction to use the term proximate cause, and that it is error not to do so. To this we cannot assent; the instruction in this case authorizing a recovery for plaintiff, after stating the duties of the parties and referring to the several alleged acts of negligence by defendant, authorized a recovery for the plaintiff only if the jury should believe such action upon defendant's part ''caused the defendant's motor vehicle to come in contact with or to collide with the plaintiff's motor vehicle.'' Clearly this was a requirement that some one or more of the alleged acts of negligence should have been the cause of the collision, and is a sufficient compliance with the requirements of the law. City of Louisville v. Hart's Admr., 143 Ky. 171.

There are other complaints of the instructions, but an examination of those given by the court convinces us that the issues were all fairly and properly submitted.

Judgment affirmed.