**Roy FARRIS, Appellant,**

**v.**

**Vernell SUMMEROUR et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1956.

Raymond O. Harmon, Boehl, Stopher, Kilgarriff, Graves & Deindoerfer, Louisville, for appellant.

Charles W. Morris, Morris & Garlove, Louisville, for appellees.

STANLEY, Commissioner.

This is a case of an automobile collision at an ordinary street intersection in a residential district of Louisville. The accident happened about half past 12 o'clock in the morning of December 16, 1954.

Roy Farris sued Vernell Summerour, the driver, and James E. Gibbs, Jr., the owner of the car which collided with his car. Gibbs counterclaimed for damages to his automobile. It having been developed that Gibbs had merely loaned his car to Miss Summerour on this occasion for her own use, the court submitted to the jury only the issues of negligence and liability for damages of the two drivers and Gibbs' right to recover damages if the jury should find Farris was negligent. A verdict was returned in favor of Farris for $1,458 against Miss Summerour and against Gibbs on his counterclaim. Judgment was entered accordingly. On a motion for a new trial and a judgment notwithstanding the verdict, the court set aside the verdict and judgment on the ground that the record showed Farris was contributorily negligent as a matter of law. A judgment was entered dismissing Farris' complaint and directing that a jury fix the amount of damages Farris should pay Gibbs. The record does not show that was immediately done. Farris has filed a motion for an appeal.

Farris and Miss Summerour were alone in their respective cars and were the only eyewitnesses to the accident. He was on his way home from work, traveling south on Bradley Avenue. She was on her way home from a bridge party, traveling east on Maylawn Avenue. The defendant admitted she was driving on the north side, which was on the wrong side of the street. KRS 189.340(4) (b). She testified she approached the intersection going between thirty and thirty-five miles an hour. Some shrubbery in a yard bordering Maylawn Avenue on the north to some extent obscured the view of one looking northwardly for a car coming south on Bradley Avenue. She testified that she saw Farris' car coming when she was fifteen feet west of the intersection and then applied her brakes. However, skid marks on the street began twenty or twenty-five feet from the intersection. Considering time for the driver's reaction, it is apparent the defendant was farther away. She had told the police that night that she was "right at the intersection" when she first saw Farris' car. The front end of the defendant's automobile struck the rear, right side of plaintiff's car within the northwest quarter of the intersection. Both cars came to a stop in a yard on the southeast corner, diagonally across the intersection area. The defendant's car turned upsidedown and came to rest on its top ten or fifteen feet east of Bradley Avenue and south of Maylawn.

All of these circumstances indicate the defendant was traveling on the wrong side of the street at an excessive speed and did not have the machine under control.

On the appeal, the defendant, as appellee, hypothecates her right to have the judgment affirmed even though it be assumed she was negligent on the ground the plaintiff was contributorily negligent as a matter of law. The postulate as to the defendant's negligence might well be a frank admission, for it was abundantly proven.

The plaintiff testified that he approached the intersection at about thirty miles an hour and began to look for crossing traffic when possibly seventy feet away. He continued on the lookout but did not see the defendant's car or any lights of a car approaching the intersection. The first he knew of the presence of the defendant's automobile was when he saw "a red flash" at the moment of the collision. He was knocked unconscious. He stated that his view of a car coming from the west was obstructed by the house and the shrubbery on the northwest corner lot. Upon repeated interrogation, the plaintiff stated again and again that although he continued looking in both directions, he never saw the defendant's car nor any lights of an approaching automobile.

Neither of the examining attorneys asked the defendant as to the lights on her car, but the Judge asked: "What about the lights you had on the automobile of Mr. Gibbs? Can you give us any estimate about how far you could see substantial objects ahead of you with the lights on?" She answered, "I would say at least sixty or seventy feet." Doubtless, the estimate of distance was too short unless the defendant was driving with her parking lights. Nevertheless, that is the only evidence on the point. The statute requires that the lower beam of an automobile headlight shall be sufficient to reveal persons and vehicles at a distance of at least one hundred feet ahead. KRS 189.040.

In rendering the final judgment, the trial court expressed the opinion that (1) the defendant's automobile was in sight at the time the plaintiff entered the intersection and that he may not be heard to say he looked and did not see it, for he ought to have seen it; or (2) this was a blind and, therefore, a hazardous intersection, and the plaintiff entered it without exercising care commensurate with the danger.

There is no doubt of a motorist's duty to keep a careful or vigilant lookout ahead for other vehicles at an intersection and elsewhere. This means that he must look in such an observant manner as to enable him to see and discover a condition which one in the exercise of ordinary care for his own safety and the safety of other persons would expect to see under like or similar circumstances. In this case the plaintiff testified positively and unequivocally that he was approaching the intersection at a reasonable speed and maintaining a lookout. Thus, it may be said his testimony proved he had observed the duties required of him. Do the circumstances of the collision afford an inference or conclusion so positive and so certain that the court could say as a matter of law that the plaintiff did not observe those duties?

The duty to look implies the duty to see that which is obvious or in plain sight unless some excuse is shown for not seeing the object. But we do not regard the rule that a motorist will be held to have seen what he should have seen to be absolute or so arbitrary that in all events the court must hold one to the rule as a matter of law. It may be so applied only where another automobile or other object is clearly visible and in plain sight or there was a condition confronting a motorist of such a nature and within such a time as to be a danger so obvious that the court is bound to say there could be no reasonable conclusion other than that in the exercise of ordinary care the motorist should have seen it. Where an automobile suddenly appears in a place where it should not be, the party charged

with being dilatory or negligent ought not to be held too strictly to the rule. It is elementary that an automobile driver is legally justified in assuming other drivers will obey the traffic laws and customs.

■ In stating the rule that an automobile driver will be deemed to have seen what he could and should have seen and is under a duty to see, the text in 60 C.J.S., Motor Vehicles, § 353(b), p. 841, adds, "However it is only where the approaching danger is plainly visible that one cannot be heard to say that he looked without having had notice of the danger, and the mere fact that a driver might have seen the other vehicle moving into the intersection in time to have avoided the accident does not necessarily bar recovery." And on this aspect or qualification of the rule (termed "the physical fact doctrine"), Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2, § 1037, p. 351, says: "It is thus not negligence, as a matter of law, for a driver of a motor vehicle approaching an intersection to fail to observe another vehicle approaching on the cross street on the wrong side of the street, although such other vehicle is visible while some distance away." And on page 353, that a driver approaching an intersection "is not required to keep a lookout for and avoid, at his peril, vehicles approaching from the right at an unlawful rate of speed; and the fact that a motorist approaching an intersecting road looked and did not see an automobile coming from the right thereon does not as a matter of law convict him of negligence."

In our several cases applying the rule of imputed or imposed knowledge of the presence of an automobile or a locomotive it was undisputed, or the physical facts and circumstances revealed, that the vehicle was clearly and plainly visible and was where it had the lawful right to be and the party chargeable with knowledge could have averted the accident had he looked or listened. See Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933; Vaughn v. Jones, Ky., 257 S.W.2d 583.

■ In the present case there was no reason for the plaintiff to anticipate an automobile would be coming toward the crossing at an excessive speed on the wrong side of the street and with headlights that did not conform to the statutory requirement, or that it would enter the quarter section of the area which the plaintiff had the lawful right to pre-empt. The court properly instructed the jury that it was the plaintiff's duty to yield the right of way to the defendant (since she was approaching from the right) unless the jury should believe that the defendant's car was farther from the point of the intersection of the respective paths of the cars than was the plaintiff's car, and that in such an event it was the defendant's duty to yield the right of way through the intersection. KRS 189.-330(2).

It is implicit in the statute and in such an instruction on this traffic rule that each car is, respectively, on its right-hand side of the street or highway; and so in the present case, if the defendant had been observing the law, the paths of the two cars would have crossed within the southwest and not in the northwest quarter of the intersection area. It is of significance that the defendant struck the side of the plaintiff's car near the back of it. He almost escaped.

■ It is, of course, elemental that where there are conflicting or different inferences of fact to be reasonably drawn from the evidence, it is a question for the jury whether the plaintiff was guilty of contributory negligence in a collision between his and the defendant's motor vehicles approaching each other on intersecting paths. And this rule has been applied in determining whether the plaintiff was guilty of contributory negligence in failing to see the defendant's car in time to avoid the collision. Thus, in Schneider v. Rolf, 211 Ky. 669, 278 S.W. 100, where the defendant's evidence was that the two cars involved reach-

ed the intersection about the same time but plaintiff's evidence was that when he reached the corner the defendant's car was 75 or 100 feet away, we concluded that if the defendant's evidence was true, or believed to be true, there was no contributory negligence on his part as a matter of law, for under such circumstances he had the right of way, although the other car was approaching from his right. The question of contributory negligence was held to have been properly submitted to the jury. Like conclusions were reached under similar circumstances in Gartrell v. Harris' Coadm'xs, 300 Ky. 82, 187 S.W.2d 1019; Danville Cab Co. v. Hendren, 304 Ky. 528, 201 S.W.2d 561; Curry's Adm'x v. Travelsted, Ky., 271 S.W.2d 37; Bumpus v. Drinkard's Adm'x, Ky., 279 S.W.2d 4; Wagner v. Emmett, Ky., 280 S.W.2d 210. See 61 C.J. S., Motor Vehicles, § 527, pp. 534, 535.

The case of Hobbs v. Thorns, 195 Va. 639, 79 S.E.2d 854, 855, is strikingly like the case at bar. Hobbs sued for damages and Thorns counterclaimed. The jury found for the plaintiff, and the trial court set aside the verdict and entered judgment for the defendant. That accident also occurred at an ordinary street intersection late on a December afternoon when it was "hazy dusk." The plaintiff was driving northwardly and the defendant was east bound. [Here the plaintiff was south bound and the defendant was east bound.] The plaintiff testified he was keeping a lookout and that his view to the left (the direction from which the defendant came) was partly obscured by a building and a fence; that he slowed down and then when he had passed the south curb line, he could see " 'half a block or more.' " When he reached the middle of the street, he saw the defendant's car when it was four or five feet away and about to strike his car broadside. It appears that the defendant's car was displaying its parking lights but not its headlights. The collision occurred " 'in the middle' of the intersection." In reversing the judgment and directing that the verdict for the plaintiff be reinstated, the court said:

"It is argued that Hobbs' admission that he did not see the Thorns car until both vehicles were in the intersection and the collision was imminent, shows that he was not keeping a proper lookout and was thus guilty of contributory negligence which bars his recovery as a matter of law. We do not agree with that argument. The plaintiff was only required to exercise ordinary care to keep a reasonable lookout as he approached and entered the intersection. It was not his absolute duty to see the other car unless it was in such plain view that looking with reasonable care he was bound to have seen it. Oliver v. Forsyth, 190 Va. 710, 716, 58 S.E.2d 49, 51. He says that before entering the intersection he looked in the direction from which the Thorns car came and did not see it. It is significant that both passengers in the Hobbs car testified to the same effect. The jury may have inferred that the Thorns car, traveling in the semi-darkness without headlights, was not discernible to a person exercising a reasonably careful lookout.

"But aside from this, even if it be assumed that Hobbs was negligent in not sooner observing the Thorns car, it was for the jury to say whether such negligence was a proximate cause of the collision. Since, by his own testimony, Thorns saw the approaching Hobbs car in ample time to have avoided the collision, the jury may have thought that it was too close for Thorns to attempt to pass in front of it, and that his failure to yield the right of way was the sole proximate cause of the collision. Indeed, as has been said, the jury's verdict on the issues involved necessarily indicates that it found that the negligence of Thorns was in fact the sole proximate cause of the collision.

"On the whole we are of opinion that the issues of the negligence of the defendant, Thorns, and the contributo-

ry negligence of the plaintiff, Hobbs, were for the jury, and that its verdict was binding on the trial court and should not have been set aside. As we have so often said, if reasonable men may honestly differ from the proof submitted as to the negligence or contributory negligence charged, the question is not one of law, but one of fact for the jury under proper instructions."

So, it is in the case at bar. We are of opinion that the trial court was in error in setting aside the verdict and judgment entered thereon. Accordingly, the appellant's motion for an appeal is sustained, and the judgment appealed from is reversed with directions to reinstate the former judgment.

Judgment reversed.