## Louisville & Nashville Railroad Company v. Charles S. Mahoney.

### Same v. Forest Mahoney.

(Decided March 15, 1927.)

### Appeal from Nelson Circuit Court.

1. Railroads.—Under complaint alleging train ran into plaintiff's automobile, plaintiff could show by evidence that as matter of fact automobile ran into or near side of passing freight train, where automobile was struck by caboose steps, upsetting it and causing injuries; there being no variance betwen pleading and proof in such case.

2. Railroads.—In action by passengers in automobile for injuries from collision with passing train, plaintiffs could show that wigwag bell signal at crossing, on which they relied, was out of order, indicating no train was passing; evidence of condition of signal being material on question of railroad company's negligence, where road was so constructed that train could not be seen except at extremely close range on making abrupt turn.

3. Railroads.—Traveler upon highway may rely upon statutory signals of trains to guide him even at private crossing near public crossing.

4. Railroads.—Highway traveler, injured at railroad crossing as result of negligence of trainmen in failing to give statutory signals, could recover, even though engine had passed crossing before traveler reached that point.

5. Railroads.—Passengers in automobile, injured at crossing by passing train with which they collided because wigwag signal at crossing was standing still and not ringing, could show bell signal was

out of-repair for some hours prior to accident, in order to prove signal bell was out of order for sufficient length of time for railroad to have discovered its condition and to have corrected it.

6. Railroads.—In action by passengers in automobile for injuries at crossing by collision with passing train through failure of signal bell to indicate train's passage, plaintiffs were required to prove signal bell had been out of order for sufficient length of time for railroad to have discovered condition and corrected it before accident.

7. Railroads.—Persons in automobile were under duty to have lights of reasonable strength and brilliancy; failure to have such lights being negligence in action against railroad for injuries in crossing collision.

8. Damages.—Verdict of $12,500 to man injured in crossing accident, who suffered crushed vertebra, paralyzing lower limbs, rendering him permanently unable to walk or stand on his feet, held not excessive.

9. Damages.—Verdict of $800 for injuries to person injured in crossing accident held not excessive, where suffering was intense and some time was lost and money spent in effecting cure, though person had about recovered at time of trial.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and KELLEY & KELLEY for appellant.

FULTON & FULTON and OSSO STANLEY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellees, Charles S. Mahoney, and his brother, Forest Mahoney, were riding in a Ford coupe driven by Dalton Mahoney along the public highway near New Haven, in Nelson county, on the night of December 26th, 1923, when the car in which they were riding came in collision with a train of appellant company at a road crossing, overturning the coupe and injuring both of appellees, Charles in his back, a vertebrae being crushed, and Forest in other parts of his body. The jury awarded Charles $12,500 and Forest $800 in damages. There was a verdict by the same jury and judgment in each case, and this appeal is from both judgments.

The instant case was an unusual one in that the train colliding with the automobile was a long freight composed of forty odd cars, the engine to which had passed the crossing some distance and had turned around a curve out of sight before the appellees in the coupe ran up to the crossing and came into collision with the last car next to the caboose of the train. There is a map and several

photographs showing the contour of the grounds around the crossing and the trees and building and other obstructions to view which are situated near the crossing as well as the location of the highway to the railroad. Between the highway and the railroad for most of the distance from the station to the crossing, which is about a mile away, there is a slight hill or ridge, which prevents one riding in a car on the highway from seeing a train upon the tracks. The highway makes a short abrupt turn around the point of the hill when it gets very near the crossing and a traveler upon the highway can not see the crossing until he gets within a few feet of it. The night of the accident was a dark and rainy one. The lights on the Ford coupe were functioning, but, as light travels in a straight line in front of the car, it did not reflect upon the crossing or disclose that there was a train passing over the crossing until the car was turned around the bend at the crossing and had started in that direction going at the rate of 12 to 15 miles an hour, and was then so close to the railroad track that it was impossible for the driver to stop the car before striking the train, and, in an effort to avoid striking the train, he turned his car to the left and ran along the side of the track a short distance but coming so near the side of the train that the steps on the caboose, which came along very quickly thereafter, struck the Ford coupe in the back, upsetting it and throwing it over an embankment, causing the injuries of appellees. Appellees and the driver, Dalton Mahoney, were well acquainted with the crossing and its surroundings and had been for several years next before the accident. They had lived in that community for a number of years and only a short distance from the crossing. At the crossing and on the side of the track to which the coupe was approaching stood a post on which there was an electric wigwag alarm signal to warn travelers upon the highway of the approach or presence of a train upon the track, and appellees as well as Dalton Mahoney knew of the wigwag bell and that it would ring and wigwag when a train approached the crossing and while a train was on the crossing. As appellees came to the crossing realizing the danger of the place and discussing the question of whether a train was coming, each having listened therefor, they looked for and at the electrical signal bell to see whether it was showing "red," wigwagging and ringing, or either, and discovered that the sign was standing still, the bell not ringing and show-

ing no red. This indicated to appellees that the track was clear, that there was no train in the block and that it was safe to pass. This signal post could be seen for some distance before appellees arrived at the turn in the road that led over the crossing, and when apppellees discovered that the wigwag was quiet and indicated that there was no train in the block, they proceeded at a moderate rate of speed around the curve, intending to go over the crossing, and when in only a few feet of the place discovered for the first time that the freight train was passing over the crossing and that the signal bell was not operating and was out of order, a fact that they did not theretofore know.

To reverse the judgment appellant railroad company insists that appellees alleged one case and undertook to prove another, for which reason it is urged (1) that appellant's motion for a directed verdict in its favor should have been sustained; (2) a peremptory instruction for the railroad company should have been given because the failure, if any, of the signal at the crossing to work, of which appellees mainly complain, was not negligence as to appellees. The signal was not designed to light the highway so as to enable appellees or the driver of the automobile to see the train on the crossing in time to prevent running into it; (3) failure to give the statutory crossing signals was immaterial; (4) appellees were permitted to introduce and the jury was allowed to hear incompetent evidence very prejudicial to appellant; (5) appellees were guilty of contributory negligence in that they did not have lights in their car of the statutory power by which they could see the highway and obstructions therein; (6) the damages are excessive; (7) the instructions are erroneous, and the court erroneously refused to give instructions offered by appellant.

Appellant's complaint that the evidence established a case different from that averred in the petition as amended, is based upon a theory that there is a variance between the averment which describes the accident thus, "and while attempting to cross defendant's railroad track, at said crossing, the defendant, its agents and servants and employes carelessly and negligently ran a train of defendant's against and upon the automobile in which this plaintiff was traveling and thereby and as a direct result thereof, injured this plaintiff by striking

and bruising this plaintiff's body and arms and legs and sides and chest," whereas the proof tends to show that the automobile ran into the side of the train. We are unable to see the force of such an argument, although we are cognizant of the fact that the evidence shows that the coupe ran near or into the side of the train before the train and the car collided, the train, or some part of it, striking the rear of the automobile after it had run up near the train and stopped and the striking of the automobile by the train upset the automobile and caused it to go over an embankment causing the injury of appellees. The averment that the defendant's train ran against and upon the automobile in which the plaintiff was traveling was proven by the facts which we have recited, showing that the steps, or some part of the train, struck the automobile and caused the injury.

(2) Appellant's next contention is that the wigwag signal, if out of order, did not amount to negligence on the part of the railroad company as to appellee because, as the company argues, the signal was not designed to light the highway so as to enable appellees and the driver of the automobile to see the train on the crossing. Possibly the light in the wigwag signal was not intended to give light to a traveler upon the highway so that he could see a train upon the track but it was intended to give a warning signal to travelers upon the highway that the crossing was then occupied by a train or was about to be occupied by a train then approaching, and to warn the approaching traveler of the danger of attempting to pass over the crossing, and a traveler upon the highway who was acquainted with the fact that a wigwag signal bell and light were regularly maintained at that crossing, had a right to rely upon the efficiency of that signal to warn him of the approach of the train to the crossing and of the train upon the crossing, when he could not see and know of the presence of the train at or about the crossing. All three persons in the Ford coupe testified positively that they had listened for trains and train signals for some distance before they reached the crossing and had heard no sound indicating that a train was near the crossing, and further testified that the crossing signals were not given by the engine, at least they did not hear such signals although they were listening for them; and further testified that the wigwag signal bell and light were standing still, making no noise whatever, and there was no red light, indicating, as they say, that

the track was clear and that it was safe to go upon the crossing. There was, therefore, no merit in the contention that there was a variance between the proof and the averment of the petition as amended which would entitle appellant to an instructed verdict in its favor.

We can not agree with the appellant in its argument that the failure to give the statutory crossing signals was immaterial in this case. The rule is well established that a traveler upon a highway, even at a private crossing, near a public crossing, may rely upon the statutory signals of trains to guide him at a private crossing; and, further, that a traveler upon a highway, approaching a railroad crossing, may rely upon the statutory signals, and if none is given, may assume that there is no train approaching, and if a highway traveler is injured at a railroad crossing as a direct result of the negligence of the trainmen failing to give such signals, he may have a recovery; and this would seem to be true even though the engine had passed the crossing before the traveler reached that point. While most accidents to travelers upon a highway, come about through collision between the engine and the highway traveler it is not always so, and the engine of the train is not the only dangerous part, for a traveler may be injured as well by a passing coach as by a passing engine. There could be no sound reason, we think, for holding that no statutory signals should be required or given in cases where the highway traveler is so far back on the highway from the crossing that he can not reach the crossing until after the engine has passed that point. True, in most cases one can see a train on the crossing, but upon a dark, rainy night when he suddenly comes around the bend in a road near the crossing, where his vision is obstructed, the presence of the train may not be known to the traveler, and in such case he is entitled to a warning signal which the statute requires the trainmen to give of an approaching train to a public highway crossing.

The incompetent evidence of which appellant complains is that given by three witnesses to the effect that the wigwag bell signal was out of repair for some hours before the accident. One of the witnesses at least testified that at three o'clock in the afternoon before the accident he was at the crossing and discovered that the wigwag signal was out of commission, and other witnesses testified that about 6:30 o'clock the evening before the accident the bell was not ringing when a train passed.

It is said in argument of counsel for appellant: "The fact, if so, that the bell did not operate when Wheatley (the witness) was at the crossing was no evidence whatever that it did not operate when the train in question approached the crossing." We think counsel in error in this. It must be borne in mind that appellees and the driver of the automobile in which they were riding all testified that the wigwag bell was not moving, ringing or showing red, and there is no evidence to show that it was. It was then necessary for the appellees to prove that the signal bell had been out of order for a sufficient length of time for the railroad company to discover its disordered condition and to correct it before the accident. In proving this appellees showed that at three o'clock in the afternoon before the accident the bell was not ringing. Certainly if appellees had failed to prove that the bell had been out of order for a sufficient length of time for the company to have discovered its disordered condition, it might have asked a directed verdict in its favor with some show of reason. At most the evidence could not possibly have prejudiced the rights of appellant, because the same facts were shown by three witnesses who were not contradicted. The case of Southern Railway Company v. Winchester, Executrix, 127 Ky. 144, does not lay down a contrary rule. The signal bell in the Winchester case was not automatic, but was a cord bell, and there are many other facts in that case different from those of this case. It was the duty of appellees to have lights of reasonable strength and brilliancy on the automobile in which they were riding, and if they had failed to have such lights would have been negligence on their part, but the evidence shows that the lights on their automobiles were of the usual brilliancy and gave as much light on the road as is usually obtained from automobiles; but as light travels in a straight line and as the highway paralleled the railroad the light also paralleled the railroad and did not reflect upon the crossing until the automobile was turned in that direction, which was only a second before the accident, and the distance was so short that appellees and the driver could not stop the car and avoid the collision.

It does not seem that the damages under the facts of this case could be held excessive. The verdict in favor of Charles Mahoney for $12,500 is not more than should be awarded one who has suffered a crushed vertebrae

which paralyzed his lower limbs and rendered him permanently unable to walk or to do work that required standing upon his feet. The injury received by Charles Mahoney was a very serious and no doubt permanent one. He will never be able physically to perform any manual labor such as he had been accustomed to doing before the accident. There is, therefore, no merit in the contention that the verdict is excessive. The injuries to Forest were much less severe than those of Charles, but he was badly injured, though he had about recovered at the time of the trial. His suffering, according to the evidence, must have been very excruciating, and he lost some time and expended some money in effecting the cure. All these facts taken together make the verdict of $800 seem reasonable in all respects.

Finding no error in either of the judgments warranting a reversal, they are affirmed.

Judgment affirmed. Judge McCandless not sitting.