## Wallis v. Illinois Central Railroad Company (three cases).

(Decided Jan. 24, 1933.)

M. C. ANDERSON and C. C. GRASSHAM for appellants.
WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On February 12, 1931, while traveling from Paducah toward Wickliffe on state highway No. 60, an automobile driven by V. W. Wallis came in·collision with a freight train operated by the Illinois Central Railroad Company crossing the highway near Maxon Station. The automobile was badly wrecked, and Katherine Wallis, wife of the driver, and Mary I. Wallis, his mother, are alleged to have sustained personal injuries. Alleging that the collision was caused by the negligence· of the company, V. W. Wallis is seeking to recover for damages done to the automobile and to clothing worn by him. His wife and mother by separate actions are seeking to recover for personal injuries which they sustained. The three actions were tried together in the court below.

In the cases of Katherine and Mary I. Wallis, the jury found for the defendant, and in the case of V. W. Wallis, found nothing for the plaintiff but returned a verdict in favor of the defendant on its counterclaim for the sum of $50. All of the plaintiffs are prosecuting an appeal from a judgment entered in conformity with the verdicts.

In addition to a general allegation of negligence in paragraph 1 of all the petitions, it is alleged in a

second paragraph that at the time of the accident, and due to surrounding circumstances and conditions, the railroad crossing was unusually dangerous and hazardous to persons traveling along the highway and that the company failed to exercise the care and caution commensurate with such increased hazard and danger to protect them from injury.

The company's answer in all the cases consisted of a general denial and a plea of contributory negligence, and in the case of V. W. Wallis it made its answer a counterclaim alleging that by reason of the negligent operation of his automobile, two of its cars were derailed and damaged and that it had incurred expense in repairing and replacing the cars on the tracks, and prayed for judgment on its counterclaim for the sums thus expended which are in excess of the amount awarded by the jury. In the case of Katherine Wallis and Mary I. Wallis there is an additional plea that V. W. Wallis negligently operated his automobile, thereby causing it to come in collision with the train, and that the injury, if any, to the occupants of the car was not due to any negligence on its part but due solely to the negligence of V. W. Wallis.

It is shown by the evidence that the train was about 2,500 feet in length, consisting of an engine, tender, 80 cars, and a caboose. About half of the train had passed over the highway crossing when the accident occurred, since the thirty-seventh or thirty-eighth car from the engine came in collision with the automobile and both of these cars were derailed. Mary I. Wallis stated that she was so dazed by the shock of the collision that she did not regain consciousness until the following morning and remembered nothing of the accident; however, there is evidence that immediately after the accident, she walked with others to a nearby farm house where a small cut over her eye was dressed. She remained there and engaged in conversation for about 30 minutes before leaving with her son and his family for his home. There is evidence to show property damage sustained by V. W. Wallis and personal injuries sustained by the others, but a recital of the evidence as to the extent or nature of such injuries is unnecessary, since not material to a decision of the question presented.

V. W. Wallis and his wife testified that they were traveling about 30 miles per hour and with their lights burning; that they were looking ahead but did not discover the train until they were within 25 or 30 feet of it. Mr. Wallis then applied both brakes. He testified that after applying the brakes, it appeared that he would not be able to stop before striking the train, so he turned to the left and in the direction which the train was going. In some way, which he does not attempt to explain, the rear end of the automobile came in contact with the cars of the train. The automobile was thrown head on into the embankment at the roadside and overturned in the ditch. There is some evidence indicating that the rear end skidded into the train. They testified that they did not hear any signal given by the train for the crossing and did not see any lights on the train nor did they see any signs warning them that they were near the crossing. They further testified that the grade of the highway in approaching the tracks is such that the lights from the automobile reflected on the ground or underneath the train and did not reveal the body of the cars until they were within 25 or 30 feet of the train. Other witnesses introduced by appellant testified that the lights from an automobile did not show up on the cars of a train passing over the crossing until the automobile was within a short distance of the tracks. There was also evidence for appellants tending to indicate that in approaching the crossing in the direction in which they were traveling the view is broken and obscured by buildings and trees. There are in evidence a number of photographic views of the highway, the railroad tracks, and surrounding conditions.

For appellee, it is shown that about 500 feet from the crossing, and on the side from which appellants were approaching, there is a sign erected by the highway department to warn travelers that they are approaching a railroad. This is the usual metal disk on a post at the roadside with the letters "R. R." in black on a light background; and on the side of the railroad tracks, the company maintains the usual cross-arm sign for crossings. These signs were there at the time, and there is substantial evidence to show that they are clearly revealed in the nighttime by the lights of an automobile. One witness testified that in approaching the crossing in the nighttime, as appellants were doing,

the lights of his automobile revealed the sign maintained by the railroad company when within about 150 feet of the tracks. There is other evidence indicating that the lights on an automobile approaching from that direction will shine on the cars of a passing train. The engineer, fireman, and other trainmen testified that the customary signals were given for the crossing; and in this they are corroborated by a number of people living near the crossing.

It is first urged by counsel for appellant that the duty of the respective parties to avoid giving or receiving injuries was the same, and that the court erred in the instructions to the jury in imposing a lookout duty upon the driver of the automobile and not imposing a similar duty upon the servants of appellee who were operating its train. It is not denied that the engine had already passed over and was at least 1,000 feet from the crossing when the accident occurred, and there is no evidence to indicate or from which it may be inferred that a lookout upon the part of the trainmen would have prevented the accident. Furthermore, appellants offered instruction A-1 given in each case, which defined the duties of appellee and which did not include the duty of keeping a lookout ahead. Appellants cannot complain of an instruction given upon their own motion. Louisville & N. Ry. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648; Turner Elkhorn Coal Co. v. Smith, 239 Ky. 428, 39 S. W. (2d) 649.

It is insisted that the court erred in instructions in the Mary I. and Katherine Wallis cases, in that it imposed upon the driver of the automobile the duty to have it equipped with lights that would reveal objects at least 200 feet ahead; it being urged by counsel that there is no evidence to indicate that the accident was due to failure to have the automobile lighted as required by law. The instructions complained of in each case merely defined the duties of the driver in operating the automobile and precluded recovery if the jury believed from the evidence that the driver negligently failed to observe any one or more of these duties, and the injuries, if any, to the complaining parties were due solely to such negligence upon the part of the driver.

Negligence to be actionable must be the proximate cause of the accident producing the injury. Wright v.

Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465. And while the negligence of the driver of an automobile cannot be imputed to a guest, the latter cannot recover against a third party if the driver's negligence was the sole cause of the accident out of which the injury complained of grew. Consolidated Coach Corp. v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1; Thurman v. Ky. Traction & Terminal Co., 218 Ky. 594, 291 S. W. 1037.

The statute (Ky. Stats., sec. 2739g-24) imposes upon the driver of an automobile the duty of having it equipped with lights that will reveal substantial objects at least 200 feet ahead. There is evidence of a substantial character tending to indicate, or from which a natural inference would arise, that this automobile was not so equipped, and making an issue for the jury on that question which was properly submitted under the instructions given. See Louisville & N. Ry. Co. v. Mahoney, 220 Ky. 30, 294 S. W. 777.

It is also insisted that since the duty with respect to the lights was not embodied in the instructions in the V. W. Wallis case, and the three cases were heard together, the apparent conflict in the instructions was confusing and calculated to mislead the jury. The failure to include this duty in the instructions in the V. W. Wallis case evidently was due to oversight; however, it made the instructions more favorable to him, and it is apparent that a jury could not be misled because it was omitted from one instruction and included in the others.

The instructions in the V. W. Wallis case are attacked as erroneous on the ground that they give undue prominence to the duties imposed upon the driver of the automobile because same are set out in two different instructions. The instructions, both on appellant's claim and on appellee's counterclaim, define their respective rights and duties. This does not render the instructions erroneous. Trent v. C. & O. Ry. Co., 221 Ky. 622, 299 S. W. 556; Vandivier v. Tye, 231 Ky. 630, 21 S. W. (2d) 1006.

Argument is made that there is no evidence of contributory negligence upon the part of Mary I. and Katherine Wallis and therefore an instruction on that question in their cases was improper and erroneous. Every one is responsible for failure to exercise ordi-

nary care for his own safety as well as for the safety of others, and one who exposes himself to dangers obvious to persons of ordinary care and prudence is guilty of contributory negligence. These women were approaching a crossing, of which at least one of them knew; but aside from knowledge of the existing crossing there were two signs to warn them of their approach. While the evidence shows they were in a closed car, it further reveals that one of the windows was down. Not only the trainmen but a number of disinterested witnesses testified that the trainmen gave the statutory signals for the crossing and that the train was actually on the crossing when the automobile approached it. In view of the circumstances and other proven facts, it is apparent that the instruction was properly given. Thurman v. Ky. Traction & Terminal Co., supra; Cox's Adm'r v. C., N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S. W. (2d) 859.

It is further urged that appellants were prejudiced because the instructions referred to the automobile as running into the train, instead of referring to it as coming in collision with the train. The evidence for both parties clearly indicates that the automobile did actually run or skid into the train. There is no escape from this conclusion, and it could not be misleading to a jury, since it was not a question as to which struck the other but only whose negligence caused the accident, and this was fairly submitted under the instructions.

It is finally urged that the court erred in permitting the jury to view the crossing in the daytime when the situation was necessarily different from what it was on a dark, rainy night when the accident occurred. The record shows that the jury was sent to view the scene, of the accident upon motion of appellants; however, their counsel insist that the record is erroneous in this particular. In any event, this was a matter within the discretion of the trial judge and his action would not authorize a reversal unless it should clearly appear that this discretion was abused to the prejudice of the parties complaining.

Finding no error that would authorize a reversal, the judgments in all three cases are affirmed.