## Tate v. Shaver (two cases).

March 14, 1941.

As Modified on Denial of Rehearing June 20, 1941.

30

T. O. Jones for appellant.

Davis, Boehl, Viser & Marcus and T. J. Sparks for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

These two appeals grow out of an automobile collision which occurred on January 28, 1939, at the intersection of College and Trowbridge streets in Greenville. The appellee, J. L. Shaver; plaintiff below, filed a common-law action against the appellant, C. F. Tate, to recover $134.85 damages his car suffered in the collision with Tate's car as a result of the latter's alleged negligence. Tate's answer traversed the petition, pleaded negligence on the part of Shaver and on counterclaim sought to recover $1,200 for personal injuries sustained in the accident and $300 damages done his car. A reply completed the issues. The trial of the cause was had on October 18, 1939, resulting in a verdict for Shaver in the full amount sued for, and the judgment on the verdict dismissed Tate's counterclaim from which he appeals.

At the time of the accident there were no "Stop" signs at this intersection, but subsequent to the accident and before the date of the trial, signs were erected warning traffic on Trowbridge to stop at its intersection with College street. The trial was practically completed by 11:30 and court adjourned at that hour for the noon recess in order to prepare the instructions, giving the

jurors the usual admonition not to discuss the case nor to make up their minds. During the noon adjournment two of the jurors, King and Smith, visited the scene of the accident. This fact was not known by the court, the parties or their attorneys, and was not discovered until some time in December, 1939, which was after the October term of the Muhlenberg Circuit Court had adjourned. Promptly after discovering this conduct on the part of these two jurors, Tate filed a petition in equity seeking a new trial on the ground that they had not heeded the admonition of the court and had made up their minds from what they saw when visiting the scene of the accident. Shaver answered that this visit of the jurors, King and Smith, had no effect upon them, nor upon the verdict reached.

The court dismissed the petition for a new trial and Tate appeals from that judgment. By agreement the appeal from the judgment in the common-law action dismissing Tate's counterclaim and the appeal from the judgment refusing a new trial in the equity action were heard together, and this opinion disposes of both appeals.

Trowbridge street runs east and west, while College street intersects it from north to south. Tate was driving west on the north side of Trowbridge street and Shaver was driving south on the west side of College street, therefore each was driving on the right-hand side of the street he was traveling. An embankment and some weeds obstructed the view of both drivers as they approached this intersection, and it was testified that neither could see the other for more than 10 to 30 feet as they approached the intersection. As Tate's car reached the west side of the intersection, Shaver's car entered it from the north and the collision resulted. The front of neither car was damaged as a direct result of the impact. Tate's car was smashed near the right front door, while Shaver's car took the lick about the left front wheel; also, the rear of the two cars came together. Both cars were Fords and were approximately the same size and weight. As a result of the collision, Tate's car was deflected south across Trowbridge street, the front of it struck a telephone pole located at the southwest corner of Trowbridge and College streets; also, Shaver's car was thrown from its course and went west on Trowbridge street some few feet before it

stopped. The front of Tate's car was severely damaged when it ran against the telephone pole and this together with the damage caused by the impact practically demolished it. He was knocked unconscious and was painfully hurt. Shaver received no personal injuries, and the damages to his car was $134.85. The fact that neither car took the impact with its front and that each was deflected into a course almost at a ninety-degree angle from that in which it was traveling, and the further fact that the rear of the two cars came together, is strongly indicative that just a moment before the collision Tate pulled his car to the left and Shaver pulled his car to his right.

The court's instructions in appropriate language told the jury it was the duty of each driver to have his car under reasonable control; to keep a lookout ahead; and upon approaching the intersection the car which was nearest the point of intersection of the paths of the two cars had the right of way. If the jury believed from the evidence that defendant, Tate, failed to exercise any one or more of such duties and as a direct and proximate result of his negligent failure, if any, the plaintiff, Shaver, while exercising ordinary care for his own safety, had his car damaged by the collision, the law was for the plaintiff; or if the jury believed from the evidence that the plaintiff failed to exercise any one or more of such duties and as a direct and proximate result of his negligent failure, if any, the defendant, Tate, while in the exercise of ordinary care for his own safety was personally injured and his car damaged by the collision, the law was for the defendant on his counterclaim. A fifth instruction told the jury that if they believed from the evidence that both plaintiff and defendant were negligent and that the accident resulted from the negligence of both, the jury would not award damages to either. Proper instructions were given on the measure of damages of each party, as well as instructions correctly defining "negligence" and "ordinary care."

Tate contends that as his car had practically crossed the intersection when the accident occurred and as it was not damaged in front, the physical facts show he was not violating any of the duties imposed upon him in the instructions regardless of what Shaver testified, and the question of his negligence should not have been

submitted to the jury; that the court should have peremptorily instructed the jury to find for him and should have submitted to it only the amount of his damages. He cites Pickering v. Simpkins, 271 Ky. 288, 111 S. W. (2d) 650, and Rammage v. Kendall, 168 Ky. 26, 181 S. W. 631, L. R. A. 1916C, 1295, to the effect that where there is no contrariety of evidence and all of it shows defendant was negligent and there was no contributory negligence on the part of the plaintiff, he is entitled to a peremptory instruction and only the question of damages should be submitted to the jury. He further cites C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335, and Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B 471, holding that the physical facts may be such as to overcome verbal testimony even though uncontradicted.

There was a conflict between Tate and Shaver as to the former's speed. Tate testified he was driving 20 miles per hour and reduced his speed to 15 for the intersection. Shaver testified Tate was making from 20 to 25 miles per hour and did not slacken his speed as he approached the intersection. There were no other eye-witnesses to the accident, although several heard the crash and arrived on the scene immediately thereafter. Section 2739g-51, Kentucky Statutes Supplement 1939, provides no operator of a motor vehicle upon a public highway shall drive at a greater speed than is reasonable and proper, having regard for the traffic and the use of the highway. The fact that subsection 1 of that section states that a rate of speed in excess of 20 miles per hour through a closely built-up business section of any city or town shall be prima facie evidence of unreasonable or improper driving does not change or affect the basic rule that every operator of a motor vehicle on the highway must drive at a reasonable rate of speed, having due regard for the traffic conditions under which he is then driving. Meriweather's Adm'x v. Pickering, 273 Ky. 367, 116 S. W. (2d) 670. Therefore, it was for the jury to determine under the evidence whether or not Tate as he approached and went into the intersection, with the view partially obstructed by the embankment and weeds, had his car under reasonable control.

Tate argues that as he had almost gotten through the intersection and as his car was practically at the

western line of College street when the collision occurred, this proves he reached the intersection of the two streets before Shaver, therefore he had the right of way. It is true this is persuasive evidence that Tate reached the intersection first. Although section 2739g-37, Kentucky Statutes Supplement 1939, relative to street intersections, provides,

> "the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of intersection of their paths than such first named vehicle",

we can see the strength of Tate's argument that when the Legislature used "paths" in this section it had reference to the streets on which the vehicles were traveling; and when instructing in the language of the statute the court should tell the jury that the word "paths" as used therein refers to the streets upon which the cars were traveling. There is support for such argument in Schneider v. Rolf, 211 Ky. 669, 278 S. W. 100; Big Sandy Bus Line Co. v. Williams, 246 Ky. 758, 56 S. W. (2d) 346; Cook v. Gillespie, 259 Ky. 281, 82 S. W. (2d) 347. But see Kentucky Livery Co. v. Meyers, 196 Ky. 822, 245 S. W. 822, and Newbold v. Brotzge, 209 Ky. 218, 272 S. W. 755, where the court appears to have held that the vehicle having the right of way at street intersections is the one first reaching the point where the paths of the two vehicles would intersect, rather than the one first reaching the point where the streets intersect.

However, it is not necessary for us to decide this question as instruction "B", relative to the right of way at the intersection, offered by Tate was in practically the same words on this particular issue as was instruction No. 3 given by the court, which told the jury to find for Tate if Shaver's car was farther "from the point of intersection of their paths than was defendant's (Tate's) automobile"; and Tate did not request the court to instruct the jury that "paths" as used in the instruction referred to the streets on which the cars were traveling. No rule of law is better established than that in appellate procedure a party cannot invite an error and then complain of it, and this rule forbids one from objecting to the court giving an instruction

which he has offered. Stanley's Instructions to Juries, 53, sec. 38; Challinor v. Axton, 246 Ky. 76, 54 S. W. (2d) 600; Wallis v. Illinois Cent. R. Co., 247 Ky. 70, 56 S. W. (2d) 715.

It was further argued by Tate that as his car was not damaged on its front by the impact, this is another physical fact showing he did not run into the Shaver car, therefore he was not negligent. Neither was Shaver's car damaged on its front. It is evident each driver abruptly changed the course of his car a moment before the collision, hence the point at which each car contacted the other sheds but little light on whose negligence caused the accident. The instant case does not come within the rule of the cases of Pickering v. Simpkins, 271 Ky. 288, 111 S. W. (2d) 650, and Rammage v. Kendall, 168 Ky. 26, 181 S. W. 631, L. R. A. 1916C, 1295, that when the evidence shows no negligence on the part of the plaintiff and that defendant alone was negligent, the court should peremptorily instruct the jury to find for the plaintiff and only the question of damages should be submitted. Nor do the physical facts here overcome the verbal testimony as they did in the cases of C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335, and L. & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471. Both the testimony of the witnesses and the physical facts raise sharp issues as to the negligence of which party brought about the collision, and there was sufficient evidence to sustain a verdict for the plaintiff, Shaver, or for the defendant, Tate, on his counterclaim.

From what we have said of the instructions it is apparent that Tate is in no position to complain of them, and it will be unnecessary to discuss his criticism thereof. Instruction "A" offered by Tate covers contributory negligence only on the part of Shaver and the instructions given by the court on contributory negligence correctly covered such negligence on the part of each party. Tate's instruction "B" was erroneous in that it would have allowed him to recover regardless of his own contributory negligence.

Tate relies upon Louisville Railway Co. v. Hallahan, Ky., 119 S. W. 200; Hughes v. General Electric L. & P. Co., 107 Ky. 485, 54 S. W. 723, 21 Ky. Law Rep. 1202, and Meier v. Weikel, 59 S. W. 496, 22 Ky. Law

Rep. 953, as entitling him to a new trial because of the two jurors' visit to the scene of the accident during the noon recess. An examination of these authorities reveal that in each instance the jury in charge of the sheriff was sent to view certain machinery and at the instance of the sheriff, or of some member of the jury, the machinery was put in operation in the presence of the jurors so they could see how it worked and the effect had upon the issues in controversy. The court held in each instance that this amounted to receiving evidence out of court and in the absence of the party and his counsel. Those cases are easily distinguished from the one at bar where two jurors merely went to the place of the accident and the record does not show what observations they made. It is true "Stop" signs had been erected on Trowbridge street since the accident and before the trial, but nothing in the record reveals that the two jurors observed them. No demonstration was made in the instant case as was done in those relied upon by Tate. It has long been the rule in this jurisdiction that testimony of a juror may be received in support of the verdict but not to impeach it for misconduct on the part of some of the jurors, hence the evidence contained in the stipulation was competent. Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164; Sizemore v. Com., 189 Ky. 46, 224 S. W. 637; Byers' Adm'r v. Hines, 194 Ky. 448, 239 S. W. 783; Pollack v. Southern R. Co., 220 Ky. 302, 295 S. W. 150.

The stipulation shows King and Smith would testify that nothing they saw influenced their verdict and they considered only the evidence coming from the witness stand, the instructions of the court and argument of counsel; that they never mentioned to the other members of the jury they had visited the place of the accident. The stipulation further shows the other ten members of the jury would testify that King and Smith never mentioned to them of having been to the intersection where the accident occurred, or what they had seen there; that the verdict was reached from what the entire jury heard in the court room during the trial. In the circumstances we cannot say the court erred in refusing to grant Tate a new trial.

The judgment in each case is affirmed.