# Wathen et al. v. Mackey.

March 20, 1945.

As Extended on Denial of Rehearing May 29, 1945.

Hal O. Williams for appellant.

J. C. Cloyd and Richard F. Lynch for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellee, as guardian of John W. O'Neil, a minor, sued Marie Wathen, conducting business in the name of Peacock Coal Company, and Albert Parrish, truck driver. It was charged that on December 22, 1943, the boy was thrown from and run over by the company's truck then operated by Parrish. The result was that the boy received severe bodily injuries. It was charged that his injury was caused by the carelessness and negligence of the operator of the coal company's truck. Prayer was for $10,348, $348 being for medical and hospital expenses.

Joint answer denied all allegations of the petition, and affirmatively alleged contributory negligence on the part of the boy. In an amended petition, controverted of record, it was said that at the time of the injury O'-Neil, under sixteen years of age, was an employee of the coal company; that the employment was one dangerous to life and limb, and known so to be by the company and the driver of the truck.

Upon submission the jury returned a verdict in favor of appellee for $1,000 damages and $198 medical services. While several grounds were set up in support of motion for new trial, in brief they are reduced to: (A) The court erred in refusing to direct a favorable verdict, (1) because of a failure to prove negligence on the part of defendants; (2) because the proof established contributory negligence on the part of plaintiff; (3) because of failure of proof of the relationship of employer and employee. (B) Because the court erred in instructing the jury on any of the issues, since there was a failure of proof, and particularly on the question as to whether or not Mrs. Wathen had employed O'Neil to accompany the truck prior to the accident.

The boy was under fifteen at the time of the accident. He said that he had been employed at the time

he was fourteen years of age, and had been working for Mrs. Wathen during vacation and after school hours. His work consisted of cleaning up the yard and assisting in storing coal. Bringing him up to the date of the accident, he said he had been working on two or three loads of coal that day. He said Mrs. Wathen had told him to go home to dinner, and Parrish came by his home and picked him up. He got on the truck and rode to Twenty-second and St. Xavier Streets, where Parrish was to deliver a load of coal. Parrish drove his truck to a point across the street from the home of Mr. Whalin for the purpose of getting directions as to unloading. When Parrish came back he told O'Neil to get out and watch to see if any traffic was coming. At this point it may be well to describe, as best we can, the situation at and near the point of the accident.

The purchaser of the coal was Louie Whalin, who lived at the corner of Twenty-second and St. Xavier. He said that Parrish pulled his truck up in front of his home facing on Twenty-second Street. Parrish came to the kitchen door, and handed him the ticket, and he told him that the garage where the coal was to be put was back on St. Xavier. Parrish then backed his truck north across St. Xavier, and cleared the intersection, and was backing north on Twenty-second Street. At same point Parrish stopped his truck and ran to a point, ostensibly where the boy was lying in the street, about the center of St. Xavier toward the east side of Twenty-second Street "at the edge of the snow that had been whipped out by the cars coming out Twenty-second Street." Resuming O'Neil's testimony, he said that when Parrish told him to watch for traffic he got out; went to the corner and watched for traffic until he backed up. When he had straightened out his truck he told O'Neil to get in. He said that before he got in and while he was on the fender Parrish started off with a lunge which threw him off, and that was all he remembered, though he says some part of the truck struck him. At another point he said he was trying to open the door when the driver started the truck; that "when I got on he let out the clutch all of a sudden."

There were no eye-witnesses, save O'Neil and Parrish, and the latter does not say how the accident occurred. Parrish said, in direct conflict with O'Neil's

evidence on the point, that when he was getting the weight ticket the boy opened the cab door and got in the truck, not by his invitation, nor as far as he knew, at the request of Mrs. Wathen. He then described what occurred when he and the boy arrived at Whalin's home. He says that when he stopped across the street from the Whalin house he told the boy to get out on the sidewalk and watch and give him signals while he backed up on Twenty-second Street, and the boy went back to the corner of the intersection and got on the sidewalk, and that was 'the last time he saw him until after the accident. Parrish says that at that time he went from reverse into first gear, and that was the only stop he made, since he backed the truck all the way to the garage on St. Xavier. He denied that he gave the boy either order or invitation to get in the truck at any time after he stationed himself on the sidewalk corner. The next time he saw O'Neil he was lying in the street just a little past the center of the intersection of the two streets ''a little bit more toward the southeast corner.'' Parrish had no idea as to how the boy got from the sidewalk at the southeast corner of the intersection to the point where he was later found. Parrish said that he did feel a jolt or lift of his car which indicated that he had ''rolled over an object of some kind,'' but he attributed this to a buckled place in the asphalt, but the boy was ''further back, west of that.'' Parrish hailed a cab and gave directions to take O'Neil to the coal office, because as he said he did not know the boy's address. He then went back and unloaded the coal. It does not appear from Parrish's testimony where he was when he discovered or became aware that the boy had met with an accident, but it is significant that he was aware that something had happened. Whalin, who had not seen the boy on the corner, said: ''When Parrish backed up to where you would start up, he stopped and got out of the truck and went running up the street, and I got there a little bit after he did.''

We gather that it is upon the testimony of Parrish that counsel for appellant assert that defendants were entitled to a peremptory instruction on the theory that the boy was guilty of contributory negligence as a matter of law. This may be passed with the observation that the testimony, while authorizing (as was given) an instruction on contributory negligence, would not justify.

us in holding on purely inferential testimony that the court should have taken the case from the jury.

Considering the contentions that appellants were entitled to peremptory at any stage of the proceedings, and that the proof did not warrant the giving of instructions on negligence, we need only to refer to the testimony of the boy. He was positive that when the truck stopped he was told by Parrish to get in, and that as he stepped on the running board or fender, and was about to open the door, Parrish started the truck with a lunge. If this was true, then there was a lack of ordinary care for the boy's safety on the part of Parrish. It would hardly do to say that because the boy was unable to tell just what caused his injury (though he does say some part of the truck struck him) that the evidence was insufficient to submit to the jury the question of whether or not Parrish was guilty of negligence in starting the truck suddenly, after he had told the boy to get back on or in the truck.

The testimony of O'Neil was sufficient to take the case to the jury, which had the right to determine from the sharply conflicting evidence whether the boy's statements in this respect were true, or whether Parrish was giving a true account. There was enough evidence here, and of probative value tending to show a negligent act on the part of Parrish to submit the question to the jury, and to uphold its verdict. The question is for the jury if there is any probative evidence showing negligence, or from which the jury might in reason infer negligence. Cadle v. McHargue, 249 Ky. 385, 60 S. W. 2d 973. It is only where there is no controversy or conflict, and only one conclusion may be drawn by reasonable minds, that the question becomes one of law for the court. Hogge v. Anchor Motor Freight of Delaware, 277 Ky. 460, 126 S. W. 2d 877.

What has been said so far is in relation to the liability of the truck driver for his act of negligence. The pleadings and the proof presented another issue determinable from the facts, the question of liability of Mrs. Wathen. Parties appear to make that question turn on the bare proposition that O'Neil either was or was not at the time of the injury in the employment of the coal company, or narrowing it still further, as to whether O'Neil was directed to make the particular trip with

Parrish, or it was made with her knowledge. It is not at all disputed that Parrish was regularly in the company's employ, and just before the accident had been directed to take the load of coal to Whalin. He was at that time acting well in the scope of his authority, and his negligence was that of the employer. Berry v. Irwin, 220 Ky. 708, 295 S. W. 1020; Hunt v. Whitlock's Admr., 259 Ky. 286, 82 S. W. 2d 364.

However, taking up the other issue raised by the pleadings and proof, and submitted, we reach a similar conclusion as indicated on the question of negligence of the truck driver, that is, that there was sufficient proof to take the case to the jury. O'Neil was positive in his assertion that he had been employed around the coal yard for some time, and was working there on the day of the injury. Another young boy testified that he was working around the yard that day; that he was with O'Neil when he applied for work. Mrs. Wathen said she would not hire witness but would hire O'Neil. He said that he had worked at odd times with O'Neil, in the yard and storing coal. "That morning John was cleaning up the yard before he went out on the truck."

Whalin testified that Parrish had said at the time of the injury "if this woman don't get a man to help me on the truck I am going to quit driving." This was denied by Parrish. The mother testified that she was at the hospital shortly after the injury, and John told her to send to Mrs. Wathen and get his money, a dollar and twenty cents for three hours work. She sent another son the next day and Mrs. Wathen said she did not owe him anything, but did give him a dollar to be used for buying ice cream.

Mrs. Wathen was positive that the boy had never been in her employ; that he was not working for her on the day of the injury, and that she had no knowledge of his getting on or being on the truck when it left the coal yard. She said that he did come to the office quite often and she would lend him a wheelbarrow for the purpose of storing coal. She had done this on the Saturday before the accident, when he had wheeled in coal for some one who had purchased coal from her. She further said that the boys had come to her office twice that morning and she had ordered him away from the yard. She is corroborated in this, but Morton said he was the

boy she told she would not hire. Mrs. Wathen said she kept payroll and social security records, but John's name did not appear on either. She also said that Whalin's order was not to be stored, but was a "throw in" job.

Parrish said that he did not know "how come" O'Neil to be on his truck on the day of the accident. He was uncertain whether O'Neil had been on a run with him previously, or had been on a previous run that morning. He admits that he told the cab driver to take O'Neil to the coal office that morning, as he did not know the boy's address. From the proof it is apparent that while the boy had suffered some injury, he was conscious. He said that he had on some occasion taken the boy along to "store some coal," and he had collected the storage charge from the customer and paid the boy, though he says Mrs. Wathen never directed him to do this. He could not recall whether he made two deliveries that morning, and could not recall whether or not O'Neil had accompanied him and helped him shovel in the coal. The evasiveness of this witness is exemplified in the following: "Q. Did you ever see John on a storage job? Ans. I could not say. Q. Did you ever see him on a storage job? Ans. I could not say that either. Q. Didn't you testify that you had picked him up yourself and paid him out of your own money? Ans. I never stayed there to see him put it in, store the coal. I have taken him out," though he could not recall how often. He denied that he had told the boy's father that John had been with him storing coal that morning. There is some other evidence which would corroborate Mrs. Wathen's testimony that she directed John to leave the office on the morning of the accident, and that she did not see, or could not have seen him get on the truck. Thus on this point we have conflicting evidence, but if the boy was to be believed he was intermittently in the employ of Mrs. Wathen, and was employed by her on the morning of the accident; these were matters for the consideration of the jury, which under our system is charged with giving weight to the testimony, after the case has reached that point. We are convinced there was sufficient evidence to require submission.

Appellant relies chiefly on what they conceive to be errors in procedure. The suit was brought and prosecuted under the style, "Lawrence J. Mackey, Guardian

of John W. O'Neil, infant.'' It was alleged in the petition that Mackey had been appointed and qualified on a stated date as guardian and was so prosecuting the suit. An attested copy was noted as filed as a part of the petition, marked ''Exhibit 2,'' but for some reason, if filed, is not made a part of the transcript.

The argument is that since answer was a general denial (under the new Code rule) the fact of appointment and qualification was in issue and not proven. Another contention is that because the suit was styled as above, and thus prosecuted, there was a defect of parties. In other words, the action should have been prosecuted in the name of the infant by his guardian. On the latter point reliance is had upon Illinois Cent. R. Co. v. Head, 119 Ky. 809, 84 S. W. 751, 752, 27 Ky. Law Rep. 270. In that case the point does not appear to have been raised, but the court reversing because of faulty instructions, gratuitously said:

''The suit was brought in the name of 'Fred Head, statutory guardian of Rupert Head, suing for the use and benefit of Rupert Head.' The guardian had sustained no loss by delay of Rupert Head. The cause of action was in the infant, and should have been brought in his name by * * * his statutory guardian.''

We cannot see how the fact that the suit was brought and prosecuted in the manner indicated could have in any wise prejudiced the rights of appellant. The infant was treated in the petition, defendants' answer, and throughout trial, as the real party, and ''no one can mistake its purpose to have a recovery for the infant, and for injuries received by him.'' Chesapeake & O. R. Co. v. Case, 158 Ky. 594, 165 S. W. 968, 969.

The foregoing is approved in Dr. Pepper Bottling Co. v. Hazelip, 284 Ky. 333, 144 S. W. 2d 798. In the first case, supra, there was a general demurrer; we said if the petition was bad it was for defect of parties, and this could only be reached by special demurrer. In the instant case there was neither general nor special demurrer, nor affirmative answer. See Civil Code of Practice, subsections 2—4 of Section 92 and section 118. There is nothing in the motion and grounds for new trial, or in bill of exceptions which would in the least direct the trial court's attention to the alleged defects; it is too late to raise the question here.

Appellants' objection to the instructions is based on the contention that the proof did not justify a submission to the jury. This is particularly emphasized as to the "employment" instruction. Appellant vigorously contends that the instruction implied that Mrs. Wathen had violated the child labor statute, hence prejudicial. The proof though conflicting was sufficient to take the question to the jury.

The issue was raised by the amended petition, which stood controverted, asserting that the employment of the boy (under sixteen) was of a dangerous character, known so to be by Mrs. Wathen. The court first instructed the jury that if they believed O'Neil was injured by the negligent operation of the truck by Parrish, they should find against him. In a second instruction the court advised the jury that if they believed that Mrs. Wathen employed O'Neil, or authorized Parrish to employ O'-Neil to accompany him on the truck, and if they found against Parrish, they should also find against Mrs. Wathen.

It is obvious from what we have said above, the instruction was highly favorable to Mrs. Wathen. As presented to the jury there was nothing contained in the instruction which would indicate that Mrs. Wathen had violated any child labor statute. Neither age nor dangerous quality of the employment was mentioned. However, it is hardly necessary to discuss the question as to whether the instruction was prejudicial. The record shows that appellant tendered instructions which, had they not been refused by the court, might have directed the jury's attention to the matter about which complaint is made. They read:

"(1) The jury will find as a fact whether at the time and place concerning which they have heard evidence, plaintiff's ward was an employee of the defendant Marie Wathen, and received his injuries, if any, in the pursuance of his employment. (2) If you find under instruction (1) that plaintiff's ward was in fact an employee of the defendant, Marie Wathen, then you will find as a fact whether said Ward at the time was under 16 years of age and was employed in an occupation dangerous or injurious to health or morals or life or limb."

By their tender Mrs. Wathen invited the one given. The settled rule of appellate procedure is that a party

is estopped from complaining of an error which he invited. This applies to instructions. Even had the language used been to the same effect as the one tendered, appellant would not be heard to complain. Baker v. Clark, 186 Ky. 816, 218 S. W. 280; City of Greenville v. Johnston, 244 Ky. 782, 52 S. W. 2d 716. More recent cases are Smith v. Butt and Hardin, 281 Ky. 127, 135 S. W. 2d 67; Tate v. Shaver, 287 Ky. 29, 152 S. W. 2d 259; Collins' Adm'r v. Chesapeake & O. R. Co., 276 Ky. 659, 124 S. W. 2d 1039.

We find no error, hence the judgment is affirmed.