## Danville Cab Co. v. Hendren.

February 4, 1947.

As Extended on Denial of Rehearing

May 6, 1947.

K. S. Alcorn, Judge.

Chenault Huguely for appellant.

Edgar C. Newlin for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellee, plaintiff below, recovered a judgment of $720 for damages to his automobile occasioned by a collision between his car and a taxicab owned and operated by a partnership doing business under appellant's name. In petition it was charged that the injury was caused by the driver's negligence in the operation of appellant's cab.

Appellant answered denying, and affirmatively pleading appellee's contributory negligence, and by counterclaim pleading sole negligence of Hendren, sought recovery for damages to the cab. It was stipulated that the damage to Hendren's car was the above amount, and to the cab to the extent of $456. The only question presented here is whether or not the court, under the proof, should have sustained appellant's motion for peremptory instruction.

The collision occurred about noon of March 5, 1945, within the intersection of College and Walnut streets in Danville, when appellee's car, driven by him, was proceeding north on College Street, and the cab was proceeding west on the north side of Walnut Street. At the point where the accident occurred Walnut Street is 45 feet wide and College Street about 24 feet in width. A "Stop" sign on College Street, on the right side about 10 feet from the intersection, indicated that traffic on Walnut Street had preference over traffic on College Street, and it is admitted that cars proceeding north on College Street were required to come to a full stop before entering the intersection. At the time of the accident three business associates were in the car with Hendren, all on their way from tobacco sales to lunch.

Appellant's sole ground for reversal is that under the facts appellee was guilty of the negligence which caused the collision, and we are asked to reverse, with directions to the court, should the evidence be the same on another trial, to sustain appellant's motion and a verdict be directed in its favor on the counterclaim.

Appellee testified that as he came to Walnut Street he saw the sign and stopped and looked both ways and saw nothing approaching. He changed gears, started, and as he got about two-thirds of the way across, one of his companions said "Look out," and about that time the impact came. He does not claim that he looked, ex-

cept "straight ahead." Describing the effect of the collision he said the taxi ran into the door on the right side of his car, and took off the wheel and fender; knocked the car around and up the other street, and it came to a standstill about 10 feet from the curb on Walnut Street. The taxi ran down College Street about 140 or 150 feet. He said as he went into the intersection he was running at a rate of five or six miles per hour; his brakes were good and he could have stopped his car instantly. He said he could not estimate the speed of the approaching taxi, because "the instant I looked it hit me." There was nothing on Walnut Street in the direction from which the taxi approached to interfere with his vision. He was sure he was on his right side and came to a dead stop at the sign.

The three companions testified, and we find no material difference in their testimony and that of appellee. None of them claim that Hendren looked after he had gone into the intersection. Some of them testified, as did Hendren, that they could see for a distance of approximately 200 feet up Walnut Street, and some of them say they looked and saw no approaching car as Hendren entered the intersection. Several witnesses who were in the vicinity, at points where they could not see the accident but heard the crash, say they saw the taxi approaching the intersection "very fast," and some fix the speed at as much as 40 miles per hour.

There was only one witness introduced by appellant, Cole, the taxi driver, who had received a call. He did not know how fast he was driving, but estimated his speed at from 20 to 25 miles per hour. He was on his right side, and says he did not see the Hendren car until he got within 20 feet of the intersection when Hendren's car was "about half way through the intersection." He pulled to his right and Hendren to the left, but the impact came. The testimony of this witness is very unsatisfactory, and it is not difficult to perceive how the jury might have concluded that Cole was guilty of negligence. Indeed, appellant does not contend that Cole was free from negligence. There is no complaint of the instructions given by the court; we have examined them and it appears that the court followed the law with regard to the rights and duties of motorists, particularly as applied to intersections.

The court instructed under Sec. 189.290, KRS, as to the general duties of both operators, and under Sec. 189.330 as to duties at intersections, and as to Hendren, that it was "his duty to bring his car to a stop at the intersection * * * where the stop sign was, and to proceed cautiously yielding the right of way at that intersection to any car on Walnut Street which was within the intersection or approaching so close as to constitute an immediate hazard, but he had the right to enter the intersection and to cross it in the event that any car on Walnut Street, including that of defendant was then a sufficient distance therefrom for the plaintiff's car to cross the intersection with reasonable safety." This instruction comports with the section, supra, and particularly with subsection (5) of 189.330, which provides: "The driver of a vehicle shall likewise stop in obedience to a stop sign at an intersection where a stop sign is erected * * *. He shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

The argument of appellant is that after Hendren stopped, and seeing no car near enough to the intersection to constitute a hazard, he was yet guilty of negligence because, after going into the intersection he failed to keep a lookout up Walnut Street, which had he done, would or could have seen the taxi and stopped instantly, thus avoiding the collision. This argument is based on appellant's contention that "one cannot drive blindly and escape the consequences." Norfolk & Western R. Co. v. Barney, 262 Ky. 228, 90 S. W. 2d 14, 17, and as said in Kobusch v. Ruberoid Co., Mo. Sup., 194 S. W. 2d 911, 914, "a failure on part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law." Neither of the cases cited involved the operation of motor vehicles, the law concerning which is carefully laid down in the statutes. Counsel points us to no authoritative case involving injury caused by the negligent operation of motor vehicles.

Here the proof shows that Hendren reached the intersection, stopped, as he says, looked up Walnut Street, where he said he could see 200 feet, and saw no approaching car. Some proof shows that the taxi, which was not

seen by Hendren or any of his companions, was being driven at an unreasonable rate in a city and approaching an intersection, even though on a preferred street.

Hendren had the right under the statute, supra, after obeying the stop sign, and seeing nothing in or so near to the intersection as to appear hazardous, to proceed. He also had the right to assume that the driver of the taxi would obey the law as to speed, and as to having his car under control, surely to use ordinary care to avoid a collision, even though he was on a preferred street. Tate v. Shaver, 287 Ky. 29, 152 S. W. 2d 259; Saxton v. Tucker, 280 Ky. 777, 134 S. W. 2d 590; Thomas v. Dahl, 293 Ky. 808, 170 S. W. 2d 337.

We cannot hold that Hendren was as a matter of law guilty of sole or contributory negligence. Under the facts here shown, Hendren after stopping and looking had the right to proceed into the intersection. Whether he was guilty of negligence in failing to look after entering the intersection, or whether he proceeded "cautiously" were questions for the jury, submitted under the specific instruction given as to proceeding cautiously, and the general duties given under KRS 189.290, requiring the driver to operate his vehicle in a careful manner with regard for the safety of other vehicles on the highway.

The court correctly overruled appellant's motion made at the close of appellee's evidence. There was enough proof of negligence on the part of appellee to authorize submission, and where, as here, there was a question of primary and contributory negligence, and what might be termed secondary negligence, the cause was properly submitted at the close of all the evidence. The court having submitted the cause on all possible issues, under instructions not criticized, we have no other course than to affirm the judgment.