**Dorothy LUCK, Administratrix of the Estate of Eugene Northington Luck, Appellant,**

v.

**Eugene N. LUCK, III and Mrs. Dorothy Luck, Individually, Appellees.**

**and**

**Dorothy LUCK, Individually, Cross-Appellant,**

v.

**Eugene N. LUCK, III, Cross-Appellee.**

Court of Appeals of Kentucky.

June 6, 1986.

Kenneth E. Dillingham, Elkton, for appellant.

C.H. Gill, Jr., Elkton, G.S. Milam, Russellville, Milburn Keith, Hopkinsville, for appellees.

Before COOPER, DUNN and McDONALD, JJ.

COOPER, Judge.

This is an appeal from a declaratory judgment in which the trial court ruled that an antenuptial agreement entered into between the appellee, Dorothy Luck, and the decedent, Eugene Northington Luck, was valid and enforceable. On appeal, the principal issue is whether the trial court erred as a matter of law in so ruling. Reviewing the record below, we affirm in part and reverse in part.

The relevant facts to this action are as follows: In September of 1963, the decedent, Eugene N. Luck, and the appellee, Dorothy Luck (nee Dorothy Hogan) were married. Prior to the time of their marriage, both parties had been previously married and had children by such marriages. And, prior to the time of their marriage, the appellee had worked as an employee of the decedent at a Western Auto store owned by him on leased premises.

On the date of their marriage, the parties entered into an agreement styled "Contract and Agreement" which purported to be a type of antenuptial agreement. The first paragraph of this agreement acknowledged that it was intended to be a temporary agreement until a permanent marriage contract could be drafted:

We, the undersigned, Mrs. Dorothy Hogan, a widow, of Trenton, Kentucky, and Eugene N. Luck, a widower, of Elk-

ton, Kentucky, contemplating marriage on this day and at the moment being unable to have the services of our Attorney whom we have contacted relative to a marriage contract, and which services of the said Attorney cannot be had for this purpose for several days yet to come, enter into this Contract and Agreement until the said permanent marriage contract can be drafted by our Attorney, Mr. Boone, and signed by each of us.

Additionally, the document stated that its purpose was to protect the individual interests and estates of the parties involved, as well as to protect the respective interests of their children should one or both of the parties meet their death before a permanent marriage contract could be drafted. Accordingly, the agreement stated that the parties agreed to waive and relinquish "any and all rights of the other, or our heirs or assigns, to the property or Estate of the other, wheresoever situated." Nevertheless, the last paragraph of the agreement again stated that although the contract would be binding on each of the parties, it was intended to be temporary in nature:

It is agreed and understood that this writing shall be binding upon each of us, our heirs or assigns, until the proposed marriage contract between we two to this instrument is drafted and signed by each of us. And when the same has been drafted and signed by each of us, this writing or contract or agreement shall be null and void.

From the time of the parties' marriage in September of 1963 until the decedent's death in March of 1983, both parties worked as a team in acquiring both real and personal property, as well as in developing numerous business interests. Although the decedent evidently had drafted a will at one point in his life, he died intestate. His son, the co-appellee herein, Eugene N. Luck, III, filed a declaratory judgment action against the appellee, individually and as administratrix of the estate of Eugene Northington Luck, to determine the validity of the agreement, and to determine the status of numerous debts incurred either by the estate or the appellee individually. The trial court subsequently

issued findings of fact and conclusions of law upholding the validity of the agreement as well as ruling on the various indebtedness incurred by the estate. It is from such judgment that the appellant now appeals.

Initially, the question before this Court is whether the trial court clearly erred in ruling that the antenuptial agreement was valid and enforceable. As a general rule, antenuptial agreements, if supported by valid consideration, are valid and enforceable and favored in the law. *See Hardesty v. Hardesty*, 236 Ky. 809, 34 S.W. 2d 442 (1930). Nevertheless, if any doubt or ambiguity exists with respect to such agreement, it must be construed in a light most favorable to the wife. *See Hardesty, supra.* Yet, to be enforceable, an antenuptial agreement must be supported by valid consideration, even if such consideration is only the marriage bond itself, and must be made with a free disclosure of the extent of property owned by each of the parties:

The abstract declaration of the law that an antenuptial contract must have been fairly entered into usually consists in requiring that it be shown that the agreement substituting contractual rights for statutory rights was equitable and just, made freely and with a knowledge of the prospective wife or husband of the nature and extent of the other's estate and of her or his property rights which would otherwise be acquired by reason of the marriage. *Truitt v. Truitt's Adm'r*, 290 Ky. 632, 636, 162 S.W.2d 31 (1942).

Here, several questions arise with respect to the agreement in question: Was the agreement supported by adequate consideration? And, was there a full and complete disclosure of the property owned by each party at the time the contract was entered into? Additionally, a question exists as to whether the contract was intended to be a final and binding contract upon the parties, or whether it was simply an agreement to agree in the future. *See Johnson v. Lowery*, Ky., 270 S.W.2d 943 (1954). Although courts have allowed mar-

riage partners to enter into a contract where each relinquishes his or her respective interest in the property of another—*see Campbell v. Campbell,* Ky., 377 S.W.2d 93 (1964)—such contracts must be fair and equitable and supported by adequate consideration. Here, we find that the contract involved was neither supported by adequate consideration, nor by full disclosure on the part of the parties as to the extent of their respective properties.

■ The appellee testified that although she worked for the appellant for some three years prior to their marriage, she was not aware of the extent of his assets. Such testimony is supported by the agreement which fails to set out any specific assets of either party. This testimony, together with the absence of any specifics in the document, indicates to this Court that there was an absence of full disclosure at the time the agreement was entered into. Consequently, the agreement must fail. Furthermore, it is clear from the language of the document that it represented merely an agreement to agree at a later time. In effect, there was a mutual agreement only to agree in the future; yet, no agreement was made as to present terms or conditions. In this respect, the agreement did not constitute a binding contract. *Walker v. Keith,* Ky., 382 S.W.2d 198 (1964).

Although the trial court admitted into evidence testimony of various witnesses respecting statements made by the decedent as to the existence of an antenuptial agreement, such statements are irrelevant if the agreement was not supported by adequate consideration or represented mutual agreement of the parties. Consequently, the trial court clearly erred in ruling the agreement to be valid.

■ Notwithstanding our ruling herein, we cannot say that the trial court clearly erred in ruling as it did on the various collateral issues raised below. Specifically, there was substantial evidence to support the trial court's ruling that the promissory note for $3,000 executed by the appellee and Eugene N. Luck III was executed for the ongoing operation of the Western Auto store, and therefore constituted an indebtedness of the decedent's estate. Similarly, the sum of $7,916 representing one-half of the net proceeds of cattle sold by the appellee, does represent a portion of the decedent's estate, notwithstanding the fact that the appellee owned cattle separately at the time of her marriage. And, we cannot say that the trial court erred in ruling that the gift of a registered horse to the appellee's daughter was a valid inter vivos gift.

■ Finally, in that the antenuptial agreement is not a valid and enforceable agreement, the appellee is entitled to the statutory widow's exemption provided for in KRS 391.030(1)(c). Although the trial court failed to address this issue, the appellee is entitled to an exemption as a result of the counterclaim filed by the estate in response to the complaint.

For the foregoing reasons, the judgment of the trial court is affirmed in all respect except as to its ruling upholding the validity of the antenuptial agreement. It is directed to amend its judgment to rule that such agreement is invalid and unenforceable.

All concur.