**Richard GOSHORN, Appellant**

v.

**Donna WILSON, Executrix of the Estate of Dorothy Goshorn, Deceased; Donna Wilson; Carolyn Chafin; and John Enos, Appellee.**

No. 2011–CA–000574–MR.

Court of Appeals of Kentucky.

July 6, 2012.

Jan Kipp Kreutzer, Newport, KY, for Appellant.

Patrick J. Walsh, Newport, KY, for Appellees Donna Wilson, Carolyn Chafin and John Enos.

Before COMBS, DIXON and VANMETER, Judges.

## OPINION

VANMETER, Judge:

Richard Goshorn appeals from the Campbell Circuit Court's findings of facts, conclusions of law, and judgment entered February 24, 2011, holding the parties' prenuptial agreement valid and enforce-

able and extinguishing any interest Richard may have had in his deceased wife's residence. Richard contends the prenuptial agreement is invalid and that the court erred by invalidating his life estate in the marital residence. Reviewing the record below, we affirm in part, reverse in part, and remand for further proceedings.

Richard Goshorn and Dorothy Enos Goshorn were married on June 20, 1981. The marriage was the second marriage for both Richard and Dorothy; Richard divorced his first wife in September 1980 and Dorothy's first husband died in December 1978. Both Richard and Dorothy had adult children from their previous marriages. Before marrying, on June 12, 1981, the parties signed a prenuptial agreement specifying upon divorce or the death of one of them, each party's children from their previous marriages would receive the entirety of their parent's estate and the remaining spouse was not entitled to any assets. After they married, Richard sold his house and Dorothy's house became the marital residence.

In 2004, Dorothy constructed a will containing a clause providing that upon her death, the marital residence would pass to Richard "for so long as he shall live or until he desires to no longer reside" in the residence, at which time the residence should pass to Dorothy's three children. This was Dorothy's third drafted will; however, the previous two wills both contained the same provision guaranteeing Richard a life estate in the marital residence.

Dorothy was diagnosed with Alzheimer's disease in 2007 and began needing supervision and assistance to perform daily tasks. In the years following her diagnosis, relations between Richard and Dorothy's children, especially the youngest, Donna Wilson, deteriorated over disagreements regarding care for Dorothy. In 2009, when taking care of Dorothy became impossible for Richard to do alone, Richard's attorney told Wilson it was her responsibility to arrange for her mother's care because as power of attorney over her mother, Wilson controlled all of Dorothy's finances. As a result of their disagreements and contentious relationship, Wilson told Richard he could not spend the night in the marital residence since she was going to spend evenings there watching her mother. At the time, Richard had no interest in the marital residence since it was owned in full by Dorothy, and he believed that Dorothy must have changed her will to remove the provision of the life estate. As such, Richard purchased a condominium in June 2009 and did not spend any nights at the marital residence from June 19–July 15, 2009. However, during this time, Richard spent the entirety of his day at the residence with Dorothy but when Wilson came to spend the night, he returned to his condominium.

Wilson then invited two of her husband's relatives to move into the marital residence and take care of Dorothy for $500/ week and free lodging. She told Richard he needed to remove all of his belongings from the residence so there would be room for the couple to move in. Concerned that these two individuals were not properly trained to take care of Dorothy, Richard filed a petition requesting Dorothy be found incompetent and to obtain emergency guardianship over her. On July 15, 2009, Richard was named Dorothy's emergency guardian, began spending evenings back at the residence again, and chose to have Connecting Hearts take care of Dorothy at the marital residence full-time. Wilson objected to Richard's guardianship status and eight days later, on July 23, 2009, Keith Gambrel, a local attorney, became Dorothy's legal guardian. Richard

had previously promised Dorothy that he would not send her to a nursing home, but under Gambrel's discretion, Dorothy moved into a nursing home on October 29, 2009. Dorothy remained at the nursing home until she died on February 10, 2010. From the time Dorothy moved into the nursing home until she died, Richard lived in his condominium, not at the marital residence.

Richard was provided a copy of Dorothy's will in February 2010. Dorothy's will was admitted to probate on March 5, 2010. On May 7, 2010, Richard filed a timely renunciation of will by a surviving spouse pursuant to KRS[1] 392.080(b). Richard claimed Dorothy's will was invalid and that he desired to receive his statutory share of her remaining assets in accordance with KRS 392.020. Subsequently, Wilson filed a complaint as executrix of Dorothy's estate against Richard; Wilson individually, as well as her two other siblings, also sought a declaration of rights for each party and a proper distribution of the estate's assets in light of the alleged inconsistent terms of the prenuptial agreement and the will.

Dorothy's three children then asserted a cross-claim against Richard, alleging the prenuptial agreement was valid, the renunciation of the will was invalid, and that any interest Richard possessed in Dorothy's residence had extinguished and passed to the children. Richard's answer to the cross-claim reasserted that the prenuptial agreement could not be enforced since Dorothy did not fully disclose her assets to Richard and that without the misleading actions of Wilson, who informed Richard that he had to vacate the marital residence, he never would have moved into the condominium and thus he should still be entitled to the life estate in the residence that Dorothy left for him in her will.

A bench trial was set for January 18, 2011, and on February 24, 2011, the Campbell Circuit Court issued its findings of fact, conclusions of law, and judgment. The court held the prenuptial agreement valid, found Richard to have vacated the marital residence, extinguishing any interest he may have had in the property, and dismissed all claims Richard had against Dorothy's children for fraud, misrepresentation, and wrongful eviction. This appeal followed.

Because this is an appeal from a bench trial without a jury, the trial court's findings of fact are "not [to] be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses." *Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky.1995) (citing CR[2] 52.01). Factual findings are not considered clearly erroneous if they are "supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky.App.2005) (citations omitted). Appellate review of legal determinations and conclusions from a bench trial is *de novo*. *Id.* (citations omitted).

Richard alleges that the trial court erred by concluding that the prenuptial agreement was valid and also argues that because he was unrepresented by counsel at the time the agreement was executed, the prenuptial agreement should be scrutinized more closely for validity and voluntariness. We disagree. Generally, prenuptial agreements are "valid and enforceable and favored in the law" so long as valid consideration was given by both parties and each party fully disclosed its assets to the other. *Luck v. Luck*, 711 S.W.2d 860, 862 (Ky.App.1986) (citations

---

1. Kentucky Revised Statutes.

2. Kentucky Rules of Civil Procedure.

omitted). While valid consideration is not disputed in this case, Richard contends that Dorothy did not fully disclose her assets to him. However, the record indicates that before the prenuptial agreement was signed, the couple met with Richard Dorsey, a certified accountant. The trial court found that while Richard could not state with certainty whether he knew the extent of Dorothy's assets before signing the agreement, he did not dispute the testimony that Dorsey provided Richard with a schedule of her assets. Richard also admitted that Dorothy "probably did" make disclosures to him but that they "didn't register evidently," and in his deposition, Richard admitted having knowledge of the majority of Dorothy's assets at the time the prenuptial agreement was signed. Such testimony does not demonstrate clearly erroneous findings regarding disclosure on behalf of the trial court and does not indicate that the prenuptial agreement should be held invalid. Additionally, one is not required to consult with an attorney in making a prenuptial agreement. *See Lawson*, 896 S.W.2d at 2 (discussing validity of prenuptial agreements without mention of an attorney's advice, or lack thereof, as a relevant factor). The fact that Richard could have consulted with an attorney and chose not to does not render the agreement invalid. Therefore, this court affirms the trial court's holding that the prenuptial agreement between Dorothy and Richard is valid and enforceable and that Richard's attempt to renounce Dorothy's will fails.[3]

Next, Richard alleges that if the prenuptial agreement is valid and the will is not renounced, then the trial court erred by concluding that any interest Richard may have had in the marital residence had been extinguished. We agree. A will is a revocable instrument containing interests that remain unvested until the testator dies. *Howard's Ex'r v. Dempster*, 246 Ky. 153, 155, 54 S.W.2d 660, 661 (1932). Here, Richard's interest in the marital residence did not vest until Dorothy's will was probated on March 5, 2010. The language of the will reveals that Richard held a life estate in the marital residence which could only be terminated by a subsequent condition—his death or his relocation from the home. Richard's purchase of and move into the condominium before Dorothy's death does not count as his relocation from the marital residence since his interest in the residence had not yet vested. In interpreting wills, "the intention of the testator, as gathered from his entire will, must prevail unless it be opposed to some positive provision of the will or some general principle of public policy." *Corbin v. Manley*, 291 Ky. 289, 295, 164 S.W.2d 394, 396 (1942). The clear language of Dorothy's will expresses an intention for Richard to live in the marital residence until he no longer desires to do so. The couple used Dorothy's residence as the marital residence for twenty-eight years, Richard sold his house after the couple got married, Wilson admitted that her mother's intent in the will was to provide Richard a place to live, and in every version of Dorothy's will, she retained the portion that provided

---

**3.** Richard also alleges that the trial court incorrectly concluded that Wilson's power of attorney authorized her to evict him from the marital residence. The validity of Wilson's actions as power of attorney, however, is inconsequential to the outcome of this case. Whether Wilson had the authority to evict Richard from the marital residence has no bearing on whether Richard's interest in the marital residence has been extinguished because none of the actions leading up to Dorothy's death bear on Richard's interest in the marital residence since that interest did not commence until Dorothy's death. Therefore, this case can be decided without discussion of Wilson's actions as power of attorney over Dorothy.

Richard a life estate in the residence. Until Richard no longer desired to live in the residence, Dorothy's intent was that he be able to do so.

The trial court's conclusion that Richard made no attempt to move back into the marital residence after Dorothy's death and never told anyone that he wanted to live there is erroneous because Richard's initial attempt to renounce Dorothy's will and his assertion in his answer to Dorothy's children's counter-claim that he is entitled to a life estate in the marital residence suffice as an expression of a desire to move back into the home. The fact that Richard first opted to renounce the will has no bearing on the legality of his vested interest in the marital residence. Whether he first renounced the will or first made known his desire to reside in the residence does not affect the actual terms and vested interests contained in the will. Richard may have first chosen to renounce the will because he had an alternative residence at that point and desired to receive financial assets more so than the residence; however, after his being unable to renounce the will, the will is rendered valid and enforceable, and Richard's vested interest in the marital residence was not extinguished because neither of the subsequent conditions had occurred. Richard complied with the applicable statute of limitations period in bringing his renunciation of will claim, and to hold otherwise would give the effect of creating a separate statutory period not provided for in the will or found in any applicable statute.

Therefore, we remand this case to the trial court with directions to provide Richard a reasonable period of time to move back into the marital residence in accordance with his life estate interest under Dorothy's will. Failure on the part of Richard to timely move back into the residence will be viewed as a lack of desire to live in the residence under the will and his life estate interest will terminate. If for whatever reason the residence has been sold, the trial court is ordered to compute the actuarial value of his life estate interest and award him monetary damages in that amount.

For the foregoing reasons, the judgment of the Campbell Circuit Court is affirmed in part, reversed in part, and this case is remanded for further proceedings.

ALL CONCUR.