RENDERED:  DECEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0028-MR

DENETTA KAYE CORNETT                                    APPELLANT

                APPEAL FROM PULASKI CIRCUIT COURT
v.              HONORABLE MARCUS L. VANOVER, JUDGE
                  ACTION NO. 19-CI-01062

JACK WAYNE CORNETT                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

ACREE, JUDGE:  Denetta Cornett appeals the Pulaski Family Court's ruling that

her antenuptial agreement with Jack Cornett is not unconscionable.  We affirm.

## BACKGROUND

The family court conducted a hearing to determine the enforceability

of the parties' antenuptial agreement.  The video of that hearing was not made a

part of the certified record.  However, Denetta in her primary and reply briefs and

Jack in his responsive brief carefully cite and quote the video record with little or

no contradiction either of the other party or of the family court's factual findings. Our grasp of the facts is based on those uncontradicted references, as follows.

Jack was previously married and divorced. The main dispute in that case was over Jack's interest in a family-owned business, Cornett Machine Shop, Inc. Ultimately, that asset was ruled a gift from Jack's parents and therefore nonmarital property. The contest over that nonmarital asset was sufficiently vexatious that Jack vowed he would never again marry before protecting it with an antenuptial agreement to avoid waging the same legal battle again.

After dating a while, Denetta moved into Jack's home and Jack described for her the property issue with his prior spouse. He told Denetta that, should their relationship lead to marriage, he would expect an antenuptial agreement. After living together about a year, they did marry in 1995.

About a week before the wedding, Denetta was told the antenuptial agreement was prepared or being prepared. Three days before the wedding she met with attorney Mark Knight who drafted the agreement. She then executed it.

Jack filed for divorce in 2019. Prior to the final hearing, the family court held a separate hearing to determine the antenuptial agreement's validity, taking testimony from the parties and from attorney Mark Knight.

The family court rendered findings of fact, conclusions of law, and an order ruling the antenuptial agreement was enforceable. The November 2023

decree of dissolution incorporated that interlocutory order. Denetta appeals the decree only to the extent it found the antenuptial agreement enforceable. We will address specific findings of facts and conclusions of law in our analysis.

## STANDARD OF REVIEW

A family court's findings of fact will not be disturbed unless clearly erroneous. CR[1] 52.01; *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). "Findings of fact are not clearly erroneous if supported by substantial evidence" which, "when taken alone or in the light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people." *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020) (citation omitted).

We review a family court's legal conclusions *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

## ANALYSIS

Denetta presents two arguments: (1) Jack failed to make a "full disclosure" of material facts before Denetta executed the antenuptial agreement; and (2) a substantial change in circumstances makes the agreement's enforcement unconscionable even presuming full disclosure. Neither argument persuades us.

---

[1] Kentucky Rules of Civil Procedure.

**I. Trial court's finding "that [Denetta] was fully apprised of [Jack's] assets at the time of the signing of the [antenuptial] agreement" is supported by substantial evidence.**

The factual question the trial court was required to answer is, "Was the agreement obtained through . . . non-disclosure of material facts?" *Gentry v. Gentry*, 798 S.W.2d 928, 936 (Ky. 1990). "The first limitation upon parties to an antenuptial agreement is the requirement of full disclosure . . . [which means] it should appear [to the trial court] that the agreement was free of any material omission or misrepresentation." *Edwardson v. Edwardson*, 798 S.W.2d 941, 945 (Ky. 1990).

We first address Denetta's very narrow argument that "[t]he trial court incorrectly substitutes the term 'fully apprised' for the standard of full and complete disclosure, and for that reason alone, the trial court should be reversed." (Appellant's Br. 8.) We are not persuaded by this semantic argument. The standard has not taken on a specialized legal definition beyond the general explanation in *Edwardson*, *supra*. We find no legally meaningful distinction between the word "disclose" or "apprise," nor between those words and other synonyms such as divulge, reveal, inform, notify, tell, advise, or enlighten.

"The law is clear that the burden of proof regarding the question of full disclosure of assets at the time of the agreement rests on the party relying on the agreement." *King v. King*, 638 S.W.3d 464, 469 (Ky. App. 2021) (citations

-4-

omitted). Citing *Luck v. Luck*, 711 S.W.2d 860 (Ky. App. 1986), Denetta argues that, to satisfy that burden, "a prenuptial agreement must include an accurate listing of the assets it purports to cover." (Appellant's Br. 6.) Again, we disagree.

*Luck* was decided nearly a decade before our Supreme Court decided "the burden of proof on the issue of full disclosure of assets at the time the agreement was signed in a prenuptial contract rests on the party relying on such agreement." *Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky. 1995). Although *Luck* did not expressly say who should bear the burden on the issue of full disclosure, the trial court seems to have placed it on the appellee wife who wanted the agreement declared void. "The appellee testified that . . . she was not aware of the extent of [her deceased husband's] assets." *Luck*, 711 S.W.2d at 863. That was the only affirmative evidence presented. The appellant estate of the deceased husband presented nothing but the agreement itself "which fail[ed] to set out any specific assets of either party." *Id.* No other evidence rebutted the wife's testimony. Although, as we now know from *Lawson*, *supra*, the burden of proof was erroneously placed on the appellee wife, what carried the day for her was not the absence of a "specific listing of assets." Rather, it was the appellee wife's sworn testimony, the only substantial evidence on this point in the record. If the appellant presented evidence to the contrary, it is likely our opinion would have set it forth, but it did not. "Consequently," this Court held, "the agreement must fail." *Id.*

-5-

There is no single method for convincing the trial court that the parties made full disclosure of assets and values. We will affirm the family court's factfinding of full disclosure if the party seeking to enforce the agreement presents substantial evidence eliminating any reasonable presumption that the agreement was the product of "non-disclosure of material facts[.]" *Gentry*, 798 S.W.2d at 936. Meeting that standard will save the trial court's finding from a claim on appeal that it is clearly erroneous. CR 52.01. Here is the substantial evidence that convinced the family court of full disclosure in this case.

The court heard Denetta testify that Mark Knight went over the terms of the agreement with her and she acknowledged reading at least some of it before signing it; she also testified she signed the agreement voluntarily and no one lied to her or forced her to sign it. (Appellee's Br. 7 (citing Video Record (VR) 1/11/2023 3:07:05–3:10:30).) The court specifically noted her acknowledgment that "she was not forced or coerced into signing the agreement." (Transcript of Record (TR) 84.) Of course, "one who signs a contract is presumed to know its contents, and . . . if he has an opportunity to read the contract which he signs he is bound by its provisions . . . ." *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959). The agreement's provisions that bind Denetta say:

1. Prior to their marriage, Jack and Denetta each "accumulated a separate estate and acquainted the other with the nature, extent, and full value thereof . . . .";

-6-

2. Each desired to "retain[] his or her respective properties as separate and distinct estates . . . .";

3. "Property the title to which is in the name of one of the parties shall be that party's separate property. Property, the title to which is in the name of both parties, shall be joint property."

4. "Any appreciation of, improvements to, or income earned by separate property shall be separate property and belong to the owner of the property which produced it."

5. "In the event the parties divorce, each party agrees that all separate property shall be deemed nonmarital property, as defined by KRS Chapter 403, and neither party shall assert any claim to the other's property."

6. "In the event the parties divorce[,] each hereby waives any right he or she may have to receive maintenance, support or alimony payments from the other, regardless of the length of the marriage."

7. "Each party has made to the other a full, candid, and truthful disclosure of his or her property interest, both real and personal, and the estimated value thereof."

8. "Second party [Denetta] acknowledges that: (1) She is fully acquainted with the business and resources of [first party [Jack]; (2) She understands that [Jack] has separate property interests which he wishes to segregate and maintain as his separate property; (3) [Jack] has answered all of the questions [Denetta] has asked about [Jack's] income, assets, and property; . . . (5) [Denetta] has had the opportunity at all times to obtain and receive the advice of counsel of her own choosing . . . ."

(TR 67-70, 73-75.) The agreement thus memorializes Denetta's belief at the time she executed it that Jack fully disclosed to her every necessary bit of knowledge about Cornett Machine Shop. She has identified nothing she knows about it now that she did not know about it then.

The parties knew each other a year and a half and lived together for a year before marrying. Denetta re-affirmed in testimony she knew Jack owned a part interest in Cornett Machine Shop before she signed the agreement. (Appellee's Br. 7 (citing VR 1/11/2023 3:11:00–3:11:40).) *See* Appellant's Br. 9 ("Denetta indicated she was aware of assets").

Jack testified his ownership interest in the machine shop was a contentious issue in his first divorce. Importantly, the trial court that adjudicated his prior divorce determined his interest in Cornett Machine Shop was nonmarital property, a gift from his parents long before he married Denetta. (*Id.* (citing VR 1/11/2023 1:55:30-1:56:30).) He also testified that the value of his interest in the machine shop was less than when the parties married. Denetta presented no evidence to the contrary.

Unlike the wife's testimony in *Luck* that she was not aware of the extent of her husband's assets when they married, 711 S.W.2d at 863, Denetta twice acknowledged being "acquainted . . . with the nature, extent, and full value" of Jack's assets when they married. (TR 67). Like the trial court in *Lawson*, this trial court "specifically found that the wife was aware of the husband's financial conditions at the time of the marriage" based on testimonial evidence. 896 S.W.2d at 2. And, as in *Lawson*, "Here the trial judge correctly found as a matter of fact that the required disclosure was complete." *Id*. at 2-3.

Furthermore, as Jack persuasively argues, this family court, like the trial court in *Edwardson*, took into account the effect of "the divorce decree dissolving [the husband's] prior marriage[,]" 798 S.W.2d at 942, in which Jack's interest in Cornett Machine Shop, Inc., was adjudicated nonmarital property. The family court reaffirmed and continued that status for the duration and dissolution of Jack's second marriage. (TR 140 (Jack "is awarded the interest in Cornett Machine Shop, Inc. as his nonmarital property.").)

We agree with Jack that the antenuptial agreement did not affect the nonmarital status of that property. The agreement would have denied Denetta a distribution of any contribution she might have made to an increase in that nonmarital property's value during the marriage. However, Denetta did not testify to any value she added, and Jack testified the asset decreased in value; therefore, the agreement had no real effect on the family court's distribution of that asset.

We conclude the family court's finding of full disclosure was not clearly erroneous. The agreement was not unconscionable when executed.

## II.     Enforcement of the antenuptial agreement is not unconscionable.

An antenuptial agreement is not unconscionable if "the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work an injustice." *Blue v. Blue*, 60 S.W.3d 585, 590 (Ky. App.

2001). Denetta bore the burden of convincing the family court that such circumstances did go beyond what the antenuptial agreement contemplated.

To carry that burden, Denetta testified she "was involved in a horrific car wreck during the dissolution of marriage process"—after the parties separated but before the decree's entry—and "has a traumatic brain injury." (Appellant's Br. 10.) She argues, "It could not be contemplated by the parties at the time they entered into the agreement of the traumatic injury that would befall [her] or the medical bills that she would face." (Appellant's Br. 11.)

Denetta alleges the family court did not factor in this unanticipated tragedy and "erred in that it only considered the parties' financial condition was not substantially different from that of 1995." (Appellant's Br. 10.) She does not challenge this finding or Jack's testimony that while his situation "probably improved somewhat overall" owing to some nonmarital inheritances, these were offset by the decrease in value of his interest in Cornett Machine Shop, Inc. (Appellee's Br. 6.)

We disagree with Denetta's contention the family court failed to consider further matters. Based on the parties' testimony regarding the sale of the marital home and the expectation that each party would receive $125,000 to $150,000 from the sale, the court found Denetta was "likely to receive a substantial sum of money from the sale of the parties' home. She might also receive money as

a result of her pending lawsuit" for personal injury related to the accident. (R. 84.) Based on all these findings, the family court concluded: "No facts have arisen during the marriage which would cause the agreement to become unconscionable." (R. 85.)

"[T]he fairness of [ante]nuptial agreements must be considered on a case-by-case basis." *Blue*, 60 S.W.3d at 589. And family courts "retain broad discretion to review [ante]nuptial agreements[.]" *Id.* at 590. The antenuptial agreement goes so far as to contemplate the parties' deaths, (R. 70), leaving it unclear as to how accidents and injuries were beyond the parties' contemplation. We know of no rule that accidents and resultant injuries and medical debt are necessarily beyond the contemplation of antenuptial agreements and Denetta cites no authority to enlighten us.

Applied here, *Blue* does not compel a family court to conclude that enforcement of an antenuptial agreement will "work an injustice" in every instance involving such circumstances as this case presents. *Id.* The burden of demonstrating that injustice was Denetta's as "[t]he opponent of the agreement." *Id.* at 589. Denetta fails to develop the injustice argument, presenting only general reference to medical debt and physical limitations with no evidence these will or will not be offset as compensatory damages in a settlement or civil judgment, or that she will or will not be made whole in the end.

-11-

We discern no abuse of the family court's broad discretion in its determination that the antenuptial agreement is not unconscionable and is enforceable.

## **CONCLUSION**

Based on the foregoing, the Pulaski Circuit Court, Family Division's November 30, 2023 Decree of Dissolution of Marriage is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jason Bowman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Joseph Venters
Somerset, Kentucky